LINDA SARAFIN ROWLEY & others[1] vs. MASSACHUSETTS
ELECTRIC COMPANY.

Hampshire. November 5, 2002. - March 12, 2003.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Railroad. Easement. Real Property,* Easement, Boundary, Ownership. *Way,*
Public: discontinuance. *Statute,* Construction.

This court concluded that the plain meaning of G. L. c. 183, § 58, a provision
enacted to clarify ownership of small strips of land that lay beneath
boundaries of width that for many years have separated parcels of land, ap-
plied to instruments that conveyed real estate that in fact had frontage
along the length of a way or other similar linear monument, and did not
suggest that its effect was limited only to instruments that described the
real estate conveyed as bounded by a "way" or other similar linear
monument. [802-805]

This court concluded that a railway constituted a "way" or "other similar
linear monument" for purposes of G. L. c. 183, § 58, a provision enacted
to clarify ownership of small strips of land that lay beneath boundaries of
width that for many years have separated parcels of land, and that,
consequently, owners of property abutting a former railway could pursue
their claims to fee title in the land within the railway. [805-806]

This court concluded that owners of property abutting a former railway who
asserted a claim of title to certain real estate separate from their claim
under G. L. c. 183, § 58, on the basis that their chain of title included an
1869 quitclaim deed from a railroad to the plaintiffs' predecessor in inter-
est, had standing to bring suit to quiet title on grounds separate from § 58.
[806-807]

CIVIL ACTION commenced in the Superior Court Department on
June 15, 1998.

The case was heard by *Lawrence B. Wernick,* J., on a motion
for summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

[1] Other plaintiffs in this case are those who own in fee simple property abut-
ting parcels of the former railway over which easements were acquired. The
Superior Court's decision also concerned claims by owners of property abut-
ting land acquired by the railroad in fee simple, but those claims are not at is-
sue here.

*Wendy H. Sibbison* for the plaintiffs.

*Vincent F. O'Rourke, Jr.,* for the defendant.

The following submitted briefs for amici curiae:

*Henry H. Thayer* for The Massachusetts Conveyancers Association, Inc., & another.

*John A. Pike* for Conservation Law Foundation.

*Andrew M. Fischer & Mathias Neuber* for Massachusetts Bicycle Coalition.

*Andrea C. Ferster,* of the District of Columbia, *& Brennan F. Wall, Alexander A. Bernhard, & Sean T. Carnathan* for Rails-to-Trails Conservancy.

*Lawrence F. Scofield* for Massachusetts Land Title Association.

CORDY, J. In this case we must determine whether the owners of property abutting a former railway may claim title to the land within it pursuant to G. L. c. 183, § 58, a provision enacted to clarify ownership and ease the difficulty of identifying the owners of the small strips of land that lay beneath highways, streams, walls, and other similar boundaries of width that for generations have separated parcels of land. We conclude that they may.[2]

*Background.* The following background is undisputed. In 1866 the General Court enacted legislation allowing the New Haven and Northampton Railroad Company (railroad[3]) to extend its tracks from Northampton to Williamsburg. St. 1866, c. 66. Pursuant to the statute, the railroad filed "location plans" with the county commissioners identifying the most convenient route for the new tracks, including a branch track identified in 1875. By filing these plans the railroad automatically obtained easements over the land required to extend the route, *Hazen* v. *Boston & Me. R.R.,* 2 Gray 574, 580 (1854) ("filing of the location is the act of taking [an easement on] the land," constituting "written, permanent, record evidence of the land taken"), but the fee interests in the land remained with the owners of the

---

[2]We also conclude that a party purporting to hold prior record title to land currently claimed by the Massachusetts Electric Company (Mass. Electric) has standing to bring a suit to quiet title on grounds apart from G. L. c. 183, § 58.

[3]The New Haven and Northampton Railroad Company, and its successor railroad companies, are collectively referred to as the "railroad."

parcels affected by the taking.[4] See *Agostini* v. *North Adams Gas Light Co.*, 265 Mass. 70, 72-73 (1928) (filing railway location plan created easement; adjoining owners retained fee); *Hall* v. *Boston & Me. R.R.*, 211 Mass. 174, 176 (1912) ("That which a railroad obtains by filing a location is merely an easement . . . . The fee remains in the former owners"). Through many transactions over more than 125 years following the taking of the easements, the plaintiffs' predecessors ultimately conveyed their titles to the plaintiffs, all of whom now own separate parcels of land (in fee simple) abutting the railway. In 1962 the railroad ceased operating along the railway, and in 1971 the Massachusetts Electric Company (Mass. Electric) acquired all of the interest that the railroad then retained in it.

On learning of a proposal to reshape the former railway into a public bicycle path, the plaintiffs filed suit alleging that Mass. Electric was wrongfully claiming fee title to the former railway and seeking damages for slander of title and trespass. They also sought a declaratory judgment that they owned fee title to the land within the railway segments adjacent to their respective properties in accordance with G. L. c. 183, § 58; the railroad's easements had expired when it had abandoned their use; and, therefore, Mass. Electric had no property interest in the railway and could not have agreed to its use as a bicycle path. A Superior Court judge granted summary judgment for Mass. Electric, finding that the plaintiffs lacked standing to claim title under § 58 because their deeds did not specifically describe their properties as bounded by "a way, whether public or private, watercourse, wall, fence or other similar linear monument." The plaintiffs appealed, and we granted their application for direct appellate review.[5]

*Analysis.* The outcome of the case turns on the proper interpretation of G. L. c. 183, § 58. In pertinent part, § 58 provides that "[e]very instrument passing title to real estate

---

[4]The railroad also acquired some parcels along the route in fee simple, but those parcels are not in dispute here.

[5]We acknowledge the amicus briefs filed by The Massachusetts Conveyancers Association, Inc., and The Abstract Club; the Conservation Law Foundation; the Massachusetts Bicycle Coalition; the Rails-to-Trails Conservancy; and the Massachusetts Land Title Association, but have disregarded their post-argument letters.

abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument . . . ."[6]

The plaintiffs contend that their properties meet the precise requirements of the statute because they in fact abut a railway, which is a "way" or "other similar linear monument," and the grantors in their line of succession retained the fee interest when the railroad acquired the easements. Mass. Electric, on the other hand, asserts that because the language in the plaintiffs' deeds describes their properties either as bounded by "land of the [railroad]" or as "land now or formerly of said [railroad]," and not as bounded by the "railway," § 58 simply does not apply. Mass. Electric also contends that, even if the plaintiffs' deeds contained an adequate description, they still could not establish ownership in the railway pursuant to § 58, because a railway is not a "way" or "other similar linear monument" within the meaning of the statute.[7]

The only issues we must decide are whether G. L. c. 183,

---

[6]The full text of G. L. c. 183, § 58, is as follows:

"Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (a) the grantor retains other real estate abutting such way, watercourse or monument, in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, watercourse or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line."

[7]On appeal, Mass. Electric raises two alternative grounds on which, it argues, the summary judgment ruling of the judge below could also be affirmed: first, that the plaintiffs have failed to prove that their grantor or a grantor in the chain of title owned a fee interest in the railroad corridor when the abutting property was transferred into the plaintiffs' chain of title; and second, that the statute cannot be applied retroactively in this case because the circumstances of their claimed ownership fits within one of the exceptions to retroactivity set forth in the statute. See St. 1971, c. 684, § 2; St. 1973, c. 185, § 2; St. 1990, c. 378, § 2 (effective Jan. 1, 1991). Neither of these grounds was raised below, and their resolution would appear to require further develop-

§ 58, applies to property which in fact abuts a "way" or "other similar linear monument" even if the language in the deed does not specifically describe it in those terms; and, if so, whether a railway is a "way" or "other similar linear monument" within the meaning of § 58.[8]

A statute must be interpreted according to the intent of the Legislature "ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). We begin, as we must, with the language of the statute. By its own words, it applies to instruments passing title to real estate "abutting" a way or other similar linear monument. Using standard rules of statutory construction and grammar, the phrase "abutting a way . . . . or other similar linear monument" modifies the noun phrase "real estate," which directly precedes it. We have previously held that real estate that abuts a way for purposes of § 58 is "property with frontage along the length of a way." *Emery* v. *Crowley*, 371 Mass. 489, 494 (1976). Consequently, a plain reading of the statute is that it applies to instruments that convey real estate that in fact has frontage along the length of a way or other similar linear monument. There is nothing in the statutory language itself that suggests that its effect is limited only to instruments that describe the real estate conveyed as bounded by a "way" or other similar linear monument. If that was the legislative intent, the wording of the statute could have easily reflected it.[9] It does not.

We next look to the legislative history and cause of its enactment. General Laws c. 183, § 58, was enacted in 1971,

---

ment of the record. For these reasons, we decline to consider them. *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 540 n.23 (2001).

[8]The question whether the railroad's easement was extinguished by its abandoning the use of the railway was not decided by the judge and is not before us. Nor do we consider the issue whether Mass. Electric has any rights in the railway. Our decision is limited to whether the plaintiffs have standing to claim title pursuant to § 58, and whether two specific plaintiffs (Sherida and Alfred Cone) have other grounds on which to claim title.

[9]Language such as "[e]very instrument passing title to real estate *described in such instrument as* abutting a way" would have been adequate to accomplish such a purpose (emphasis added).

and subsequently amended in 1973 and 1990. As described by Governor Francis W. Sargent in an April 9, 1971, letter addressed to the Legislature, its object was "to meet a situation where a grantor has conveyed away all of his land abutting a way or stream, but has unknowingly failed to convey any interest he may have in land under the way or stream, thus apparently retaining his ownership of a strip of the way or stream." 1971 House Doc. No. 5307 (returning bill for further amendment). Its effect was to quiet title to sundry narrow strips of land that formed the boundaries of other tracts, by establishing "an authoritative rule of construction for all instruments passing title to real estate abutting a way." *Tattan* v. *Kurlan*, 32 Mass. App. Ct. 239, 242 (1992). It was to be retroactively applied to all prior instruments with exceptions not relevant here.[10]

Before the Legislature created this rule, the common law included a presumption that "a deed bounding on a way conveys the title to the centre of the way if the grantor owns so far." *Gould* v. *Wagner*, 196 Mass. 270, 275 (1907). This presumption was rebuttable by evidence, including extrinsic evidence, of the grantor's contrary intent. *Id.* The rule applied to all boundaries "upon a fixed monument which has width, [such] as a way, stream or wall." *Motley* v. *Sargent*, 119 Mass. 231, 235 (1875). Its rationale was as follows:

> "The theory of the law . . . is, that by taking land for a highway the public take an easement only, and not a fee; that the fee must be in somebody, and not in abeyance, and remains in the abutter; that the public easement so completely takes all that can be made serviceable to the owner, that what remains cannot be considered of much value; and therefore, if he makes a new conveyance bounding 'on the road,' and says nothing more, the presumption is, in the absence of all other proof, that the grantee takes [to the middle of the way]."

*Smith* v. *Slocomb*, 9 Gray 36, 37 (1857). See *Boston* v. *Richardson*, 13 Allen 146, 153 (1867) ("the law presumes that [the

---

[10]Mass. Electric raises the issue of retroactivity for the first time on appeal. We decline to rule on its claim. See note 7, *supra.*

grantor] did not intend to reserve the title in a strip of land, not capable of any substantial or beneficial use by him, after having parted with the land by the side of it").

General Laws c. 183, § 58, embodies an even stronger presumption in favor of vesting title in abutters than the common-law rule that it superseded. *Tattan* v. *Kurlan, supra* at 243. In contrast to the common law, the presumption applies unless the instrument of conveyance "evidences a different intent [of the grantor] by an express [exception or] reservation," and extrinsic evidence may not be used to prove the grantor's intent to retain the fee to the way. *Id.* at 243-244. Nor may that intent be proved, as it could under the common law, by language that the property is bounded "by a side line" of a way. A.L. Eno & W.V. Hovey, Real Estate Law § 4.33 (3d ed. 1995). Compare G. L. c. 183, § 58 (*b*), with *Casella* v. *Sneierson*, 325 Mass. 85, 89 (1949).

If we were to construe § 58 not to apply to instruments conveying real estate parcels abutting ways or similar linear monuments that failed to describe their boundaries as such, the ownership of the small strips that make up such ways and linear monuments would once again be derelict. In the present case, that would mean that the fee interests in the railway would reside with the unknown heirs of those who owned the parcels when the railroad filed its location plans more than 125 years ago. Such a result would defeat the very object of the statute and leave in place the imperfection it intended to remedy.

The Superior Court judge concluded, however, that there was a countervailing harm that the Legislature would not have intended if § 58 was construed in the manner the plaintiffs have suggested. He reasoned that such an interpretation would introduce "chaos" into conveyancing, creating uncertainty among conveyancers as to "whether a boundary, not described in the deed as a way or linear monument to which section 58 was applicable, was within section 58 or not." In essence, his concern was that conveyancers (and title examiners) would be obliged "to check any information 'of record' with respect to every boundary to determine whether a property abuts a way or linear monument," and that "[s]uch a result would lead to substantial uncertainty and extraordinary expense

in conveyancing."[11] This concern, while understandable, is misplaced. Such information is checked as a matter of course in the conveyancing and title examination of property in the Commonwealth, and an interpretation of § 58 consistent with its wording and its purpose would not impose extraordinary burdens or additional expense on either.[12]

We conclude that the plain meaning of G. L. c. 183, § 58, consistent with the words used, and considered in connection with the imperfection to be remedied, applies to real estate, such as the plaintiffs', that in fact abuts a "public or private [way] . . . or other similar linear monument," regardless of how it is described in the instrument of its conveyance.

We now consider whether a railway constitutes a "way" or "other similar linear monument" for purposes of § 58. We conclude that it does.

Historically, this court has expressed the view that a railway is similar to a highway. *Hall* v. *Boston & Me. R.R.*, 211 Mass. 174, 177 (1912) ("early acts of incorporation of railroads indicate a precise perception of the railroad as a highway of travel"); *Commonwealth* v. *Haverhill*, 7 Allen 523, 524 (1863) ("railroad . . . mean[s] all the land . . . taken by a railroad corporation for their road"); *Charlestown Branch R.R.* v. *County Comm'rs of Middlesex*, 7 Met. 78, 84 (1843) (filing of railroad's location plan by which it "acquired a right of way over the land," was "equivalent to the laying out of highways and turnpike roads"). Railways and highways provide similar means for linear travel along a defined course, for the convenience of the public and private parties alike. We see no principled reason

[11]As justification for his decision, the judge also relied in part on *Emery* v. *Crowley*, 371 Mass. 489 (1976), for the proposition that property does not abut a "way" unless the way is described as such in the deed. The *Emery* case is inapposite; the court's decision that the parcels abutting a "paper street" (that was never built) did not have title to the land within it turned on the fact that the deeds to those parcels delineated the parcel on which the paper street was contemplated in terms that clearly evidenced the grantor's intent to retain the ownership of the fee therein. *Id.* at 493.

[12]The Massachusetts Conveyancers Association, Inc., and the Abstract Club, which purport to represent the interests of conveyancers and title examiners in the Commonwealth, concur that our interpretation of § 58 would not impose extraordinary burdens or additional expense on conveyancing and title examination.

for distinguishing a railway from any other "public or private way" for the purpose of interpreting § 58. In this respect, our view is in accord with the majority of courts that have considered the question whether railways and highways should be differentiated in applying rules of ownership within rights of way. See *Ex parte Jones*, 669 So. 2d 161, 164-165 (Ala. 1995) (railroad akin to highway for determining legal title to property underlying rights of way); *Smith* v. *Smith*, 622 A.2d 642, 647-648 (Del. 1993) (railroad akin to highway and alleyway for determining legal title to property underlying rights of way); *Fleck* v. *Universal-Cyclops Steel Corp.*, 397 Pa. 648, 650-651 (1959) ("railroad is a highway" for determining legal title to property underlying rights of way). See also Annot., Boundary Under Conveyance of Land Bordering on Railroad Right of Way, 85 A.L.R. 404 (1933). But see *Hayden* v. *Skillings*, 78 Me. 413, 416 (1886) ("railroad is obviously vastly different from . . . the various kinds of other public ways," and therefore not subject to same rules for determining legal title to property underlying it). We conclude that the railway in this case is a "way" or "other similar linear monument" within the meaning of § 58.[13]

Finally, the plaintiffs Sherida and Alfred Cone raise a claim to title separate from their claim under § 58. The Cones assert that their chain of title includes an 1869 quitclaim deed from the railroad to the Cones' predecessor in interest, George Bartlett, conveying "all [of the railroad's] right in and title to all that certain tract or parcel of land which is included in the location of the railroad by said Grantors, in the extension of their road to Williamsburgh [*sic*], filed in the Office of the County Commissioners for said Hampshire County July 28, A.D. 1866, except so far as the same has been this day conveyed to said Company by this Grantee to which deed reference is hereby had for further description." In other words, by this instrument the Cones claim to own the entire railroad as it was described on the location plan filed in 1866. Extraordinary as

---

[13] A railway is also a valid linear monument for defining the boundaries of a parcel of land. *Ela* v. *Yeaw*, 158 Mass. 190, 192-193 (1893) ("The monuments referred to were plain. On the east the land was bounded by the westerly line of the railroad . . . .").

this claim may be, by purporting to present prior record title contrary to the property rights asserted by Mass. Electric, the Cones·have standing to bring suit to quiet title on grounds separate from § 58. *New England Box Co.* v. *C & R Constr. Co.,* 313 Mass. 696, 707 (1943) ("everyone must be deemed a stranger who can show no title and no older possession"). *Bon* v. *Graves,* 216 Mass. 440, 445 (1914) ("Such title gives the plaintiff a standing in court"). Therefore, the judge also erred in granting summary judgment against the Cones.

*Conclusion.* In accordance with the reasoning set forth above, we hold that the plaintiffs may pursue their claims to fee title in the land within the railway because their property abuts a way or other similar linear monument within the meaning of § 58. We also hold that the Cones may pursue their separate claim to pursue an action to quiet title. Therefore, we vacate the entry of summary judgment and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*