BEVERLY A. HANSON & others[1] *vs.* CADWELL CROSSING, LLC,
& another.[2]

No. 05-P-1500.

Suffolk. April 18, 2006. - June 12, 2006.

Present: LAURENCE, DREBEN, & VUONO, JJ.

*Subdivision Control,* Access ways, Plan. *Deed,* Construction. *Real Property,*
Deed. *Statute,* Construction.

In an action brought by the owners of two lots in a subdivision (plaintiffs),
against the owner of a new subdivision, alleging that pursuant to G. L.
c. 183, § 58, the derelict fee statute, the plaintiffs owned the fee in a nar-
row strip of land situated between and abutting their two lots, a Land
Court judge properly granted summary judgment in favor of the defendant,
where the documents of record — the relevant deeds and the plan of the
plaintiffs' subdivision — did not designate the disputed parcel as a
proposed way. [499-503]

CIVIL ACTION commenced in the Land Court Department on
August 31, 2004.

The case was heard by *Keith C. Long,* J., on a motion for
summary judgment.

*Wendy H. Sibbison* for the plaintiffs.

*Alfred J. Geoffrion, Jr.* (*Edward J. Partyka* with him) for the
defendants.

DREBEN, J. When the plaintiffs, the owners of lots 3 and 4 in
the Falcon Heights subdivision in Wilbraham, became aware
that lot A, a narrow strip of land situated between and abutting
lots 3 and 4, had been approved by the planning board of Wil-
braham (planning board) for use as a road to connect a new

---

[1]Douglas I. Hanson and Joseph D. Gormley. Gormley filed a timely notice
of appeal, but did not file a brief or join in the brief of the other plaintiffs. For
convenience, we will refer hereafter to the plaintiffs, although Gormley is not
technically before us on appeal.

[2]Planning board of Wilbraham.

subdivision, Cadwell Crossing Estates, owned by the defendant, Cadwell Crossing, LLC. (Cadwell), to the roads of the Falcon Heights subdivision, they brought this action in the Land Court. A sketch showing a portion of the plan of the Falcon Heights subdivision and a portion of the Cadwell land is attached hereto as an appendix.

The sole issue before us is whether the plaintiffs or Cadwell owns lot A. The plaintiffs claim that lot A was a contemplated way at the time they purchased their lots and that they now own the fee as abutters pursuant to G. L. c. 183, § 58, the derelict fee statute. A judge of the Land Court disagreed and granted Cadwell's motion for summary judgment, ruling that there was no ambiguity in the relevant documents, that none of the recorded documents made any reference to lot A as a proposed way and, as a consequence, the plaintiffs did not own lot A. He refused to allow the plaintiffs to introduce extrinsic evidence to support their claim that lot A was intended as a future way. A judgment entered declaring that G. L. c. 183, § 58, does not apply to lot A and that Cadwell is its owner. This appeal by the plaintiffs followed. We affirm the judgment.

1. *Deeds and plans for Falcon Heights and Cadwell Crossing subdivisions.* The deed to the Hansons, dated December 28, 1999 from Gregory A. Coons and Amy B. Coons, describes their lot as follows:

> "the land situated in Wilbraham, Hampden County, Massachusetts, described as follows:
>
> "Being Lot No. 4 on a plan of land entitled 'Falcon Heights' Definitive Subdivision of Land in Wilbraham, Massachusetts, Hampden County, prepared for Gregory A. Coons & Amy B. Coons dated February 18, 1998, and prepared by Almer Huntly, Jr. & Associates, Inc., recorded with the Hampden County Registry of Deeds in Plan Book 309, Page 41.
>
> "The Grantors herein reserve the fee interest in the roadways known as Autumn Road and Falcon Heights Road, both as shown on the aforementioned subdivision plan recorded in said Registry of Deeds in Plan Book 309, Page 41, and grant to the grantees herein their heirs, suc-

cessors and/or assigns, rights of ingress and egress over said roadways for all purposes for which a roadway is traditionally used."

The deed to the other plaintiff-abutter of lot A, Joseph Gormley, is dated December 17, 2003[3] and is virtually identical to the Hanson deed except that the land conveyed is described as lot 3 on the same plan. The deeds make no mention of lot A. The plan referred to in the deeds describes lot A as fifty feet wide and containing approximately 5,202 square feet, and labeled "Not a Building Lot."

On January 8, 2004, Cadwell purchased lot A, and on January 9, 2004, Cadwell purchased several parcels north of the Falcon Heights subdivision. It sought approval for a subdivision of its own, and on August 26, 2004, the planning board filed its approval of Cadwell's definitive subdivision plan. The approved plan shows that Cadwell's subdivision is located on approximately 50.6 acres of land and that lot A will become an extension of Falcon Heights Road into Cadwell's subdivision.

2. *Discussion.* Four days after the planning board filed its approval, the plaintiffs filed this action claiming, as previously indicated, that they own lot A by the application of G. L. c. 183, § 58. That statute is set out in full in the margin[4] and its effect is to strengthen "the common law . . . presumption that 'a

---

[3]Gormley acquired his interest from Todd and Renee Lisowski, who in turn, had acquired the property by deed dated September 20, 2002 from the Coonses.

[4]General Laws c. 183, § 58, as amended through St. 1990, c. 378, § 1, provides:

"Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (a) the grantor retains other real estate abutting such way, watercourse or monument, in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, watercourse or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line."

deed bounding on a way conveys the title to the centre of the way if the grantor owns so far.' " *Rowley* v. *Massachusetts Elec. Co.*, 438 Mass. 798, 803 (2003) (*Rowley*), quoting from *Gould* v. *Wagner*, 196 Mass. 270, 275 (1907).[5]

Relying on *Rowley, supra* at 805, the plaintiffs claim that G. L. c. 183, § 58, applies to every deed conveying property which in fact is bounded by a way, "regardless of how it is described in the instrument of its conveyance." They claim, therefore, that the judge erroneously restricted the inquiry to the conveyancing instruments and did not allow them to introduce evidence that lot A was a contemplated way.[6] *Rowley*, however, as the motion judge ruled, is not apposite. In that case, the defendant, Massachusetts Electric Company, had acquired the interests of a former railroad and proposed building a bicycle path on the railroad bed. The plaintiffs, whose land abutted on the railway, objected and claimed title within it pursuant to G. L. c. 183, § 58. In upholding the plaintiffs' claims, the court rejected the necessity of using prescribed words for the statute's

---

[5]"In contrast to the common law, the presumption applies unless the instrument . . . 'evidences a different intent [of the grantor] by an express [exception or] reservation' and extrinsic evidence may not be used" to counter the presumption. *Rowley*, 438 Mass. at 804, quoting from *Tattan* v. *Kurlan*, 32 Mass. App. Ct. 243-244 (1992).

[6]The plaintiffs wanted to introduce the following evidence:

1. An affidavit of Paul R. Lussier, a surveyor who participated in the Falcon Heights project, stating that his employer had prepared work plans showing lot A as a future connection from the northerly terminus of Falcon Heights Road to land abutting the subdivision to the north.

2. An affidavit of Robert E. Long, an attendee at the July 21, 2004 public meeting of the planning board (stating that his recollection was refreshed by a transcript of that meeting) who reported that the chairman of the planning board said that lot A "was put there with the potential of becoming a road."

3. A letter dated April 9, 2004 from Cadwell's counsel to Cadwell containing an opinion concerning a waiver of a by-law requirement limiting the lengths of dead-end streets. Counsel wrote: "In apparent anticipation of the necessity for future access to Cadwell, the Wilbraham Planning Board approved the Falcon Heights plan with a fifty (50') foot right of way leading to Cadwell from the road also known as 'Falcon Heights.' "

Cadwell argues that the material the plaintiffs seek to introduce is, for various reasons, not admissible and, in any event, is so tenuous that there is no genuine issue of material fact. We need not reach these questions in view of our decision that extrinsic evidence is not called for in the circumstances of this case.

application. The defendant, apparently relying on language in *Emery* v. *Crowley*, 371 Mass 489, 493-495 (1976) (see *Rowley*, *supra* at 805 n. 11), had argued that because the language of the plaintiffs' deeds described their properties either as "bounded by 'land of the [railroad]' or as 'land now or formerly of said [railroad],' and not as bounded by the 'railway,' § 58 simply [did] not apply." *Rowley*, *supra* at 801. In response to this argument, the *Rowley* court noted that if § 58 were construed as only applying to instruments specifically describing parcels as abutting ways, such construction would defeat the object of the statute.[7] *Id.* at 804. It was for this reason that the court stated that

> "a plain reading of the statute is that it applies to instruments that convey real estate that in fact has frontage along the length of a way or other similar linear monument. There is nothing in the statutory language itself that suggests that its effect is limited only to instruments that describe the real estate conveyed as bounded by a 'way' or other similar linear monument."

*Id.* at 802. That the court was directing its attention to the form of words used is apparent from its subsequent statements indicating that if the legislative intent had been to limit the statute's effect, that purpose could have been easily accomplished by providing that "[e]very instrument passing title to real estate *described in such instrument as* abutting a way" instead of the language as enacted. *Id.* at 802 & n.9.[8]

Moreover, the facts of *Rowley* were far different from the

---

[7]The court quoted a letter from Governor Sargent to the Legislature at the time of passage of the statute indicating that the object of the statute was "to meet a situation where a grantor has conveyed away all of his land abutting a way or stream, but has unknowingly failed to convey any interest he may have in land under the way or stream, thus apparently retaining his ownership of a strip of the way or stream." *Rowley*, 438 Mass. at 803, quoting from 1971 House Doc. No. 5307. The effect of the statute was to quiet the title to such strips. *Ibid.*

[8]Similarly, the following conclusion of the court in *Rowley* must be interpreted in light of the issue before the court and in the context of the facts of the case: "We conclude that the plain meaning of G. L. c. 183, § 58, consistent with the words used, and considered in connection with the imperfection to be remedied, applies to real estate, such as the plaintiffs', that in fact abuts a 'public or private [way] . . . or other similar linear monu-

present case. The former railroad had, by filing its location plan, effected "written, permanent record evidence" of the easement acquired. *Id.* at 799, quoting from *Hazen* v. *Boston & Me. R.R.*, 2 Gray 574, 580 (1854). Moreover, the railroad's former route was visible on the ground. The "way" (or "other similar monument") was clearly defined.

For G. L. c. 183, § 58, to apply, the way need not be in existence on the ground, as long as it is contemplated and sufficiently designated. Contrary to the plaintiffs' contention, it is not enough that the metes and bounds of a strip are described; "the strip has [to be] sufficiently defined as a proposed street." *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. 675, 678 (1965). In making that determination, reference may be made to the plan." *Ibid.* In contrast to the record evidence in *Rowley*, the documents of record here (deeds and plan) designate no proposed way. They do not indicate that lot A was intended as anything other than a small lot retained by the developer for any number of possible purposes such as open land, additional parking, a road, or other permissible use.[9]

Thus, at the time of the deeds to the plaintiffs, there was neither any suggestion of record nor any indication on the ground to support the claim that lot A was intended as a street or that the plaintiffs had "any interest in [lot A]." See *Emery* v. *Crowley*, 371 Mass. at 493. There was no ambiguity in the documents and we see nothing in *Rowley, supra,* that supports the need for parol evidence. Accordingly we follow "[t]he basic principle governing the interpretation of deeds [namely] that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instru-

ment,' regardless of how it is described in the instrument of its conveyance." *Rowley,* 438 Mass. at 805.

[9]The plaintiffs contend that the position of lot A on the plan, considered in light of regulation § 5.1.1.3 of Wilbraham subdivision regulations, creates an inference that lot A is to be a street. That section states: "Provision satisfactory to the Planning Board shall be made for . . . access to property which is not yet subdivided." Nothing in the plaintiffs' deeds or the plan, however, suggests that the property which Cadwell later bought did not have access to a public way. In any event, it was for the planning board to determine whether such access was necessary prior to approving the Falcon Heights subdivision. Even if an error would be relevant, there is no showing in the record that the planning board erred in its determination.

ment[s], construed when necessary in the light of the attendant circumstances." *Sheftel* v. *Lebel*, 44 Mass. App. Ct. 175, 179 (1998). Here there is no such necessity. "We are able to begin and end our inquiry here by reference to the . . . language . . . as set forth in all the relevant deeds" and plan. *Ibid.*

*Judgment affirmed.*