Wilkins, Douglas H., J.
The plaintiff, Linda Kuczinski (“Kuczinski”) brought this action for a declaration that the original grantor of a lot known as “lot 5" did not reserve ownership of the proposed street shown on a plan as abutting lot 5. The case came on for trial on December 6, 2011. The trial consisted of stipulated exhibits and essentially amounted to a case stated. On the record, each party stipulated to the truth of the short statement of ’’proposed facts" contained in the opposing party’s trial memorandum. There were no live witnesses.
BACKGROUND
Based upon the preponderance of the credible evidence and the stipulations of the parties, I find the following facts.
Kuczinski purchased a fee interest in a parcel of land with the buildings thereon on the northerly side of Mill Street, Dudley, Massachusetts by deed from Barry V. Murdock and Jeri L. (Russell)-Murdock, dated February 23, 1987, recorded at the Worcester District Registry of Deeds (“Registry”) in Book 10236, Page 297 (“Plaintiffs Deed”). The Plaintiffs Deed describes the property as being lot 5 on an unrecorded *409 plan of land surveyed for Leo Moriarty, Real Estate Service, George P. Beauregard, Prop., dated November 13, 1967, Robert F. Para, Land Surveyor (“Unrecorded Plan”). Lot 5 is bounded to the south by a road known as “Mill Road,” which is also shown on the Dudley Assessor’s Map introduced as Exhibit 6. The Plaintiffs Deed includes a metes and bounds description that has as one of its courses: “along said land now or formerly of Beauregard and a proposed street.” The phrase “said land” refers back to an earlier reference to “land now or formerly of George R. Beauregard.”
The evidence in this case does not include the Unrecorded Plan.
Kuczinski’s grantors obtained title by deed recorded in Book 8706, Page 357. The metes and bounds description in that deed is identical to the one contained in the Plaintiffs Deed.
Essentially the same description of lot 5 also appears in the deed dated November 10, 1969, from the defendant’s predecessors in title, George R. Beauregard and Florence D. Beauregard (“Beauregards”), to plaintiffs predecessor in title, K&S Builders of Webster, Inc. (“K&S”). That deed refers to the course in question as “along land of grantor also a proposed street. . .” for a distance of 203.25 feet.
The proposed street and lot 5 are shown on a plan entitled “Plan of Land in Dudley, Mass. Surveyed for Leo Moriarty Real Estate Service, George E. Beauregard, Owner,” by Robert F. Para, Land Surveyor, dated October 1969, recorded at the Worcester District Registry of Deeds, Plan Book 347, Plan 29. The properly abuts a proposed street as shown on the plan. The proposed street as shown on the plan was owned by George Beauregard. The plan makes clear that the “land of grantor” is exactly the same as the “proposed street” for the full 203.25 feet.
The defendants own 16.68 acres to the north of the proposed street and Lot 5. The defendants’ land is bounded on the west by a railroad, to the north by privately-owned land, and to the east by a railroad. From that map, I conclude that the only access to the Defendants’ land from a public way is over the proposed street.
Before conveying Lot 5 to K&S Builders of Webster, Inc., the Beauregards, as defendants’ predecessors in title, conveyed lot 4 to K&S by deed dated August 5, 1969, recorded in Book 4967, Page 575. That deed referred to the same Unrecorded Plan and described the course abutting the so-called proposed street by using the words, “. . . along other land of Grantors for a distance of Two hundred twenty-three and 61/100ths (223.61) feet. . .”
Because of the constitutional question raised by the defendants, I also make findings regarding the intent of the parties to the original conveyance by the Beau-regards. I infer that, at the time of the initial conveyance of lot 5, the Beauregards, as grantors, intended to reserve, if not the fee, then at least the use of the strip referred to as a “proposed street” for all purposes for which a street may be used in the town of Dudley, Massachusetts, including access by vehicles and otherwise to the back land owned by the Beauregards. In drawing this inference, I rely upon (1) the 50’ width of the strip, which makes the strip far more suitable for access than other purposes, (2) the description in the original deed of a “proposed street,” (3) the apparent lack of other access from a public way to the land retained by the Beauregards, (4) the Beauregards’ apparent familiarity with the process of subdividing land and (5) the large size of the remaining land, which (at least on paper) appears to hold the prospect of future subdivision, but only if sufficient access exists. I therefore find that, if the Beauregards did convey the fee in the 50’ strip, they retained an express easement to use the strip for all purposes for which roads may be used in Dudley and that such an easement would be implied if not express.
I also find that it more probable than not that— apart from the common-law presumption in effect at the time — the Beauregards did not consciously intend to convey the 50’ strip to the owners of lots 4 and 5. In drawing this conclusion, I rely upon (1) the boundaries of lots 4 and 5 contained in the deeds and as shown on the plan, (2) the absence of any property line shown on the plan (or described in any deed in the court record) between the Beauregards’ remaining land and Mill Road, (3) the configuration of the northerly boundaries of lots 4 and 5, which are not in a straight line, lie at different distances from Mill Road (203.25 and 233.61 feet, respectively), (4) the fact that drawing any property line between the Beauregard’s remaining property and the “proposed street” would require speculation as to whether the line should be diagonal, and whether the northerly line should be 233.61 feet or 203.25 feet (or some other distance) from Mill Road — an issue that the grantors would likely have addressed if it was their intention to convey fee in the proposed street and (5) the fact that the 50’ strip, whatever its northerly terminus, abuts not only lots 4 and 5, but also the remaining land of the Beauregards, who therefore would have an implied fee interest in the strip.
At the same time, because an access easement would address these concerns, I do not conclude that the Beauregards intended to protect their interests by retaining fee simple rights to the strip, instead of an easement. In particular, they did nothing to alter the course of the common-law presumptions in effect at the time.
DISCUSSION
A. Applicable Law
The parties dispute the fee ownership of the 50’ strip. They focus their arguments upon the so-called derelict fee statute, which reads.
*410 Eveiy instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (a) the grantor retains other real estate abutting such way, watercourse or monument, in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, watercourse or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line.
G.L.c. 183, §58. The deed need not use “prescribed words for the statute’s application.” Hanson v. Cadwell Crossing, LLC, 66 Mass.App.Ct. 497, 500-01 (2006). The way need not be “physically in existence so long as it is contemplated and sufficiently designated.” Brennan v. DeCosta, 24 Mass.App.Ct 968, 968 (1987). The statutory presumption applies as long as (1) the street has been sufficiently designated on a recorded plan and (2) the grantor has not included “an express exception or reservation” to the fee of the way in the deed. Tattan, 32 Mass.App.Ct. 239, 240, fn 2 (1992); and Brennan, 24 Mass.App.Ct at 968.
Reference on a plan that an area is “reserved for a future roadway” does not qualify as a “reservation” of the fee interest under §58. Tattan, 32 Mass.App.Ct. at 245. Such a reference states “at most an intention that the designated strips be used as roadways in the future [which] may give rise to nonpossessory, nonexclusive easements or rights of way in the grantors and their successors in interest, but they are plainly not express reservations of the underlying fee.” Id.
B. Application of §58 to this Case
The plaintiff argues that the phrase “along said land of grantor also a proposed street” does not constitute an “express” reservation of the fee interest in the way. She asserts that, therefore, she is the owner of 50% of the proposed way, which amounts to a strip extending 25 feet from her property line. Her complaint raises two primary issues under §58.
First, she questions whether the quoted language constitutes an “express exception or reservation” of the Beauregards’ fee interest within the meaning of §58. It is true that the description equates the “proposed street” with “land of the grantor.” The two parts of this reference describe the same course and therefore the same abutting land. However, other descriptions in the same deed also refer to “land of grantor.” Deeds commonly use similar language as a means to identify land without expressly excepting or reserving fee interests in adjoining land. For instance, in Rowley v. Mass. Electric Co., 438 Mass. 798, 801 (2003), the plaintiffs’ deeds described their properties as bounded by “land of the [railroad]” or “land now or formerly of said [railroad].” While Rowley did not discuss what constitutes an “express exception or reservation,” it did apply the statutory presumption to property bounded by “land of X” or “land of grantor” even though, at least as shown on a plan, it also bounded a way. In short, phrasing such as “by land of grantor” is merely descriptive; it does not necessarily express an intent to reserve a fee interest in land. Cf. Tattan, 32 Mass.App.Ct. at 245 (even if plans were read into the deeds, the phrase “reserved” for “future street purposes” does not express an intent to reserve a fee interest).
It follows that the reference to “land of grantor also a proposed street” does not expressly reserve or except the fee interest in the street. The vague nature of the intended grant precludes any finding of an “express” exception or reservation. If anything, the grantor’s reference to “a proposed street” suggests an intent to confer at least some benefit to the grantee and others regarding the street.
The second issue is whether the statute applies at all to this proposed street, because the street may not be “sufficiently designated.” See Brennan, 24 Mass.App.Ct. at 968. This question arises from the fact that the street is described on only three of four sides. Applying the statute to this situation poses some practical problems. Section 58 requires construing a deed to convey a fee interest in away that bounds a conveyed lot “unless . . . the grantor retains other real estate abutting such way . . .” Here, the Beaure-gards did retain land to the north of the 50’ strip. That might suggest that §58 does not apply, but the statute goes on to say “in which case” and then describes two possibilities, both of which assume that the grantor abuts the sideline of the way. The Supreme Judicial Court has interpreted the word “abutting” in §85 to mean, “property with frontage along the length of the way.” Emery v. Crowley, 371 Mass. 489, 494 (1976). Emery held a parcel that had frontage located only at the end of a paper street could not receive the benefit of §58. Depending upon where the street ends, the defendants may abut the sideline of the street or may abut only the end of the street. So far, however, there is no “end” to the so-called proposed street. If the street were to end somewhere beyond the northernmost point of lot 5, the defendants would be abutters to at least some extent on the west, but that is unknowable.
If §58 applies, the lack of a northerly boundary to the proposed street creates another problem: lot 4’s northwest comer could be defined by (1) a continuation of lot 4’s northerly boundary for 25’ and then make a 90 turn to the south or (2) a diagonal line between the closest northerly points of lots 4 and 5 or (3) a continuation of lot 5’s northerly boundary. That *411 ambiguity may make it impossible to describe lot 4 (as expanded by §58) with sufficient particularity to identify it, making the conveyance of the interest in the street to lot 4 nugatoiy. See Tattan, 32 Mass.App.Ct. at 245 n.8. Arguably, the proposed street is not “sufficiently designated.” Brennan, 24 Mass.App.Ct. 968.
Despite these difficulties, I find that the proposed street is sufficiently designated with respect to lot 5.1 therefore apply §58 to the facts of this particular case, which involves only lot 5. The purpose of the derelict fee statute — like the common law before it — is “to meet a situation where the grantor has conveyed away all of his land abutting a way . . . but has unknowingly failed to convey any interest he may have in land under the way . . . thus apparently retaining his ownership of a strip of the way or stream.” Rowley, 438 Mass, at 803-4. That statutory purpose would be undermined if a grantor retained title to a proposed street, which is sufficiently defined along the boundary of the subject properly though indefinite in its ultimate length— a consequence that would result if the way is conveyed once the roadway is constructed. See id., 438 Mass, at 804. The specific portion of the proposed way in question is sufficiently designated by metes and bounds; it is 50’ wide and lies immediately to the east of Lot 5. The problem with lot 4’s boundary does not affect lot 5, which is the shorter lot (measured along its easterly boundary). As a matter of geometry, lot 5 can only be bounded by a continuation of its northerly property line for 25 feet. Most importantly, it is not uncommon for a proposed street to be designated in the manner done here. If §58 were held inapplicable because of possible difficulties in future disputes, its effect would be greatly undermined in a substantial number of situations.
To be sure, the Supreme Judicial Court in Emery, 371 Mass. at 493, found that the parcel involved in that case “did not constitute a ‘way’ in the instruments passing title to the property abutting its north and south boundaries . . .” In that case, the deed referred to the lot constituting a proposed street simply as “other land of grantor.” In this case, however, the deed contains not only the equivalent language (“land now or formerly of Beauregard”), but also the phrase “and a proposed street.”
C. Constitutionality
Next, the defendants claim in a footnote that §58 is unconstitutional because it changes the intent of the parties to the original deed retroactively. There is no question that, as a statutoiy matter, §58 applies. The Legislature has decreed that it “shall apply to instruments executed on and after [January 1, 1972] and to instruments executed prior thereto ...” with the exception of previously registered land.
The common law, which prevailed prior to the statute, established a rule “that a grantor is estopped from denying the existence of a way when he conveys land bounded on a contemplated way as long as the contemplated way is sufficiently defined . . .” Emery, 371 Mass. at 494, citing Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 677 (1965). As the Supreme Judicial Court said in Rowley, 438 Mass. at 804:
General Laws c. 183, §58, embodies an even stronger presumption in favor of vesting title in abutters than the common-law rule that it superseded. Tattan v. Kurlan, supra at 243. In contrast to the common law, the presumption applies unless the instrument of conveyance “evidences a different intent [of the grantor] by an express [exception or] reservation," and extrinsic evidence may not be used to prove the grantor’s intent to retain the fee to the way. Id. at 243-44. Nor may that intent be proved, as it could under the common law, by language that the property is bounded “by a side line” of a way. A.L. Eno & W.V. Hovey, Real Estate Law §4.33 (3d ed. 1995). Compare G.L.c. 183, §58(b), with Casella v. Sneierson, 325 Mass. 85, 89 (1949).
While the difference between the statute and the common law might, in an appropriate case, raise a question of retroactivity, in this case, the result would be the same. In the first place, when the Beauregards conveyed title there already was a “ ‘strong’ common-law presumption” that the grantors intended to convey title to the center of the way. Tattan, 32 Mass.App.Ct. at 246 n.9, quoting Murphy, 348 Mass. at 678 (incorporation in a deed of a plan designating the strip as a “proposed street” was insufficient to overcome the common-law presumption, even combined with the grantor’s payment of taxes on the property and testimony denying an intent to convey that fee). Moreover, an ambiguity in a deed has long been construed most strongly against the grantor. Tattan, 32 Mass.App.Ct. at 245 n.7, and cases cited.
The defendants do not cite any cases supporting their unconstitutionality argument. Their main point is that prior law allowed extrinsic evidence, which §58, as construed, now prohibits. However, there is nothing in the conveyance of lot 4 and the defendants’ “ownership of a significant amount of otherwise landlocked property to the north of the proposed street and Lot 5" that would change the result. True, the deed to lot 4 describes the corresponding course on the east side of the street without reference to a proposed street, but showing that street on a plan would produce the same result under prior law. The defendants’ land is not land-locked if it has the benefit of an easement. As illustrated by Tattan at 32 Mass.App.Ct. at 247 and Brennan, 24 Mass.App.Ct. at 968, nothing in §58 affects whether a property owner has an easement.
Finally, the Legislature has authority to resolve problems, such as those created by derelict titles, by reasonable legislation that removes uncertainty by clarifying the law without amounting to a taking. *412 Boston v. Keene Corp., 406 Mass. 301, 311 (1989); Briggs v. Commonwealth, 429 Mass. 241, 255-57 (1999). The Court grants “considerable deference” to the Legislature’s judgment in weighing the public interest served by the statute against the nature of the right that the statute affects retroactively and the extent and scope of that effect. Keene, 406 Mass. at 312. Given the public interest in eliminating derelict titles, the Legislature acted reasonably and within its authority in passing §58, particularly since the interests of grantors can, as here, often be met through an access easement.
D. Access Easement
The parties have also asked the Court to rule on whether, if the plaintiffs own the fee to the 50’ strip, the defendants have an access easement to the back land. I therefore address the easement question as well and find that an easement exists expressly (and, if not, then by implication and by estoppel) for the defendants to use the 50’ strip for all purposes for which streets may be used in Dudley.
The inclusion of the phrase “proposed street” in the plaintiffs deed expresses an intention to reserve the right to use the 50’ strip as a street for access to the remaining land. Indeed, there is hardly any other interpretation that could be faithful to that phrase and the obvious intent shown on the plan to use the 50’ strip for access. According to the ordinary definition of “street,”[1] the use of that word instead of a less formal term, such as “way,” connotes an intention to use the way for all purposes for which streets may be used. The context, including the subdivision of land, coupled with the land-locked nature of the property and the large amount of backland that may be suitable for development supports the application of that meaning of “street.” I find that the defendant has the right to use the 50’ strip for all purposes for which streets may be used in Dudley. See Guillet v. Livernois, 297 Mass. 337, 340-41 (1937).
Even apart from the deed and §58, an access easement by implication exists where the deed refers to a plan showing that the lot is bounded by a way. Boudreau v. Coleman, 29 Mass.App.Ct. 621, 628 (1990). The intent of the parties to the instrument giving rise to the easement controls the question whether an easement exists by implication. Id. The court discerns the intent of the parties by examining (a) the language of the deed, “when read in light of the circumstances attending” the execution of the deed; (b) the physical condition of the premises; (c) the knowledge of the parties; (d) the reasonable necessity of the easement; and (e) whether there existed open and obvious use of the street prior to conveyance. Id. See also Murphy v. Donovan, 4 Mass.App.Ct. 519, 527-28 (1976). Here, factors (a), (b), (c) and (d) all weigh in favor of finding an easement by implication for the reasons stated above. Because this easement arose prior to and apart from §58, it is not limited to the rights possessed by abutters under that statute.
The facts also demonstrate creation of an easement by estoppel. Such an easement arises because, in granting title to lots 4 and 5, including the fee to the proposed street, the Beauregards would have deprived themselves from access to their property except over the 50’ strip. “The law presumes that one will not sell land to another without an understanding that the grantee shall have a legal right of access to it, if it is in the power of the grantor to give it, and it equally presumes an understanding of the parties that one selling a portion of his land shall have a legal right of access to the remainder over the part sold if he can reach it in no other way.” Davis v. Sikes, 254 Mass. 540, 545-46 (1926); citing New York & New England Railroad v. Railroad Commissioners, 162 Mass. 81, 83 (1894). Here, the easement is an “absolute physical necessity” even though it need only be “reasonably necessary" to exist by estoppel {Davis, at id.) — a test that is certainly met here.
Finally, as noted above, the continuation of the proposed street will make the defendants abutters within the meaning of §58. In that case, they would be persons who acquire land bounded by a street and would have “the right to use the way along its entire length,” including the 50’ strip. Brennan, 24 Mass.App.Ct. at 968, and cases cited.
ORDER FOR JUDGMENT
For the above reasons, it is ORDERED AND ADJUDGED THAT:
1. The Court declares that the plaintiff, Linda Kuczinski and her successors in title own to the middle of the “proposed street” referenced in her deed and that the northerly and southerly boundaries of the deed description of her lot (known as Lot 5) are therefore extended by 25’ to the centerline of that proposed street, all as shown on a plan entitled “Plan of Land in Dudley, Mass. Surveyed for Leo Moriarty Real Estate Service, George E. Beauregard, Owner,” by Robert F. Para, Land Surveyor, dated October 1969, recorded at the Worcester District Registry of Deeds, Plan Book 347, Plan 29.
2. The Court declares that the defendant Denise M. Gliniecki has an easement to use, for all purposes for which streets may be used in the Town of Dudley, Massachusetts, the proposed street referenced in the plaintiffs deed and shown on a plan entitled “Plan of Land in Dudley, Mass. Surveyed for Leo Moriarty Real Estate Service, George E. Beauregard, Owner,” by Robert F. Para, Land Surveyor, dated October 1969, recorded at the Worcester District Registiy of Deeds, Plan Book 347, Plan 29.

See Concise Oxford American Dictionary, p. 898 (Oxford University Press 2006) (“Street... a public road in a city or town, typically with houses and buildings on one or both sides . . .”).