FRANCIS J. McGOVERN, individually and as trustee,[1] & others[2]
*vs.* CHRISTINE M. McGOVERN & another.[3]

No. 09-P-654.

Suffolk. March 5, 2010. - September 16, 2010.

Present: LENK, GRASSO, & BERRY, JJ.

*Real Property,* Deed, Easement. *Deed,* Construction, Reformation. *Easement.*
*Way,* Private. *Statute,* Construction. *Mistake.*

Discussion of the derelict fee statute, G. L. c. 183, § 58. [693-694]
In a civil action arising from a dispute over real estate interests in a private
    driveway between the owners of a lot accessed by the driveway (grantor
    lot), and the owners of two lots located on either side of the driveway
    (easterly lot and westerly lot), that were conveyed at different times from
    the common ownership of the grantor lot, a Land Court judge erred in
    concluding that the easterly lot abutted the driveway within the meaning of
    the derelict fee statute (statute), G. L. c. 183, § 58, and that title to the
    eastern half of the driveway passed to the owners of the easterly lot by
    operation of the statute [694-698]; further, the judge erred in concluding
    that title to the eastern half of the driveway, i.e., the fee to the entire
    driveway, did not pass to the owners of the westerly lot by operation of the
    statute [698-699]; moreover, the judge erred in concluding that reformation
    of the deed to the westerly lot (to reserve expressly to the owners of the
    grantor lot the fee in the driveway) was not appropriate, where there was
    formidable and essentially undisputed evidence that the owners of the
    grantor lot did not intend to convey the fee in the driveway, and the owner
    of the westerly lot did not understand the fee in the driveway to be conveyed
    [699-702].

CIVIL ACTIONS commenced in the Land Court Department on
December 30, 2005, and in the Superior Court Department on
January 4, 2006.

After consolidation, the case was heard by *Gordon H. Piper,*

---

[1]Of the Francis J. McGovern and John Joseph McGovern Family Trust.

[2]John Joseph McGovern, as trustee of the Francis J. McGovern and John
Joseph McGovern Family Trust; and Phyllis A. McGovern and Arlene F.
Murphy.

[3]Anthony S. Leonti.

J., sitting as a judge of both the Land Court and Superior Court Departments.

*George P. Lordan, Jr. (Dennis P. Derrick* with him) for the defendants.

*Alvin S. Nathanson* for the plaintiffs.

LENK, J. This dispute among family members concerns the fee to and easement rights over a private paved driveway now known as Bagley Avenue in Bedford.[4] The judge concluded that by operation of G. L. c. 183, § 58, the derelict fee statute, plaintiffs Francis and Phyllis McGovern own the easterly portion of Bagley Avenue to the center, and defendants Christine McGovern and Anthony Leonti own the westerly portion of Bagley Avenue to the center. The judge then declared the easement rights of the parties and determined that the evidence was insufficient to justify reformation of a 1986 deed to Christine.[5] The defendants appeal. We reverse and remand for further proceedings.

*Background.* We derive the background facts from the judge's findings, which are amply supported by the record, and the joint stipulation of facts. The disputed driveway and the two properties on either side of it, owned, respectively, by siblings Francis (Frank) and Christine McGovern, were once part of a forty-five acre parcel owned since at least 1974 by Arlene and Hollis Murphy, the mother and stepfather of Frank and Christine, and their brother, John. The southern boundary of the Murphy parcel is on Hartwell Road, a public way in Bedford. The Murphys resided in a home some distance from Hartwell Road, and access to their home from Hartwell Road was by the long paved

---

[4]The plaintiffs commenced an action in December of 2005 in the Land Court seeking injunctive relief and a declaration as to ownership of Bagley Avenue, easement rights of the parties, and reformation of a 1986 deed to the defendant Christine McGovern, under a theory of mutual mistake. The defendants Christine McGovern and Anthony Leonti, who are wife and husband, answered the complaint, filed counterclaims, and commenced an action in Superior Court seeking similar declaratory relief and damages for a number of tort claims, including slander to title, trespass, undue influence and duress, and malicious interference with devise and legacy. The cases were consolidated and a judge of the Land Court was appointed to sit as a judge of both the Land Court and the Superior Court. The defendants' tort clams were dismissed or waived prior to the commencement of trial. The only issues tried were the title to Bagley Avenue, easement rights, and reformation of the 1986 deed.

[5]We use first names where the common surname would cause confusion.

driveway which is at issue in this case. The portion of the parcel on which the Murphys' home was located has consistently been referred to as Lot 151C in these proceedings and is located at the northern end of the driveway.[6] To the west of the driveway, also on the Murphys' original forty-five acre parcel, is a second home, consistently identified as located on Lot 151A. At various times through 1985, the house on Lot 151A was occupied by one or more of the three siblings. Although Lot 151A fronts directly on the public way, Hartwell Road, access to Lot 151A is over the same driveway that provides access to Lot 151C.

In 1977, the Murphys conveyed a portion of their forty-five acre parcel, known as Lot 1, to Frank and his wife, Phyllis. Lot 1 is situated generally to the easterly side of the driveway used to access lots 151C and 151A. The 1977 deed describes the parcel as "shown as Lot 1" on a plan recorded with the deed, followed by a metes and bounds description as set forth in the margin.[7,8]

---

[6]Lot 151C was conveyed to the Francis J. McGovern and John Joseph McGovern Family Trust (Trust) in September, 2004. In the recorded plans reproduced in Appendix A and Appendix B, see notes 8 and 11, *infra*, Lot 151C is identified simply as "other land of Murphy."

[7]The 1977 deed describes the parcel as "[a] certain parcel of land on the Northwesterly side of Hartwell Road, Bedford . . . and being shown as Lot #1 on a plan of land . . . said plan to be recorded with Middlesex South District Registry of Deeds and Bounded and described as follows:

"Southeasterly by the curve of Hartwell Road as shown on said plan by two courses, 188.66 feet and 36.34 feet;

"Northeasterly by other land shown on said plan of Murphy 222.58 feet;

"Northwesterly again by said Murphy land 190 feet;

"Southwesterly again by said Murphy land 58.36 feet;

"Southeasterly again by said Murphy land 20 feet;

"Southwesterly again by said Murphy land 50 feet

"Northwesterly again by said Murphy Land 20 feet

"Southwesterly again by said Murphy land 165 feet;

"Containing according to said plan 1.182 acres more or less.

"Together with an Easement and Right of Way to the Grantees their heirs and assigns to pass and repass, along with others entitled thereto, along and over a strip of land shown on said plan as "Bit. Conc. Driveway" for the purpose of ingress and egress to or from the rear or any portion of said lot."

[8]The recorded 1977 plan referenced in the deed is reproduced in Appendix A.

The metes and bounds description for Lot 1 does not mention a way, other than Hartwell Road, and does not describe the parcel as abutting or bounded by a way or driveway. It describes the property abutting Lot 1 to the northwest and southwest as "said Murphy land." The 1977 plan referenced in the 1977 deed delineates the driveway with dotted lines. As shown on the 1977 plan, a strip of land of various widths separates the southwesterly lot line of Lot 1 from the edge of the driveway, thereby creating a gap of land between Lot 1 and the driveway. The 1977 deed contains an express easement over land shown as "Bit. Conc. Driveway" on the 1977 plan for the purposes of ingress and egress to any portion of Lot 1. The easement does not mention the intervening strip.[9]

Sometime in 1985, the Murphys began to take steps to convey Lot 151A to Christine. From all that appears, by this time the private driveway that provided access to Lots 151C and 151A, and over at least some portion of which Lot 1 enjoyed an easement, had come to be called "Bagley Avenue." Because Lot 151A contained insufficient lot size and insufficient frontage on Hartwell Road, a variance was required. Although the Murphys were advised that they would not need a variance if they were willing to convey the fee to Bagley Avenue to Christine while retaining an easement for access to Lot 151C, they were unwilling to give up ownership or control of Bagley Avenue. At the variance hearing, in order to satisfy the concerns of the board of appeals that Bagley Avenue would be used to develop additional Murphy property in the rear, the Murphys agreed in writing that Bagley Avenue would not be used as a street. The board incorporated that agreement into the 1985 variance decision and granted the Murphys a variance for Lot 151A "subject to the condition that Bagley Avenue remain a driveway for access to the residence known as 151C Hartwell Ave. [*sic*] or 151C Bagley Ave . . . ." Christine was at all relevant times aware of the Murphys' position that they owned and wanted to continue to own Bagley Avenue, and understood that her rights to use the width and length of Bagley Avenue would be pursuant to an easement granted by the Murphys.

---

[9]See note 7, *supra.*

In a deed dated January 31, 1986,[10] the Murphys thereafter conveyed to Christine "[a] certain parcel of land . . . shown as Lot 151A on a plan of land . . . dated November 14, 1985 . . . ."[11] The 1986 deed contains neither a metes and bounds description nor any reservation of the fee or rights in Bagley Avenue. The 1985 plan to which the 1986 deed refers shows Lot 151A as physically abutting Bagley Avenue. In addition, on that plan, there are no dotted lines delineating the driveway, but rather "PRIVATE (AKA BAGLEY AVENUE) WAY" is shown as including the area from the southwest lot line of Lot 1 to the lot line of Lot 151A. In other words, the strip separating Lot 1 from "Bit. Conc. Driveway" that appears on the 1977 plan referenced in the 1977 deed for Lot 1 has been eliminated in the 1985 plan and the strip has instead been incorporated into the depiction of Bagley Avenue.

Disputes arose between and among the parties regarding the use and maintenance of Bagley Avenue. In December, 2000, apparently believing she retained the fee in Bagley Avenue, Arlene Murphy executed and delivered an express easement over Bagley Avenue to Christine as owner of Lot 151A; Christine recorded the easement. In January of 2005, Christine transferred the fee of Lot 151A to herself and her husband as joint tenants with rights of survivorship. Disputes concerning Bagley Avenue apparently continued, and these consolidated actions were commenced in December of 2005 and January of 2006. While initially a party to these proceedings, Arlene Murphy died in 2006. Her husband, Hollis Murphy, had predeceased her in 1997.

*Discussion.* The judge determined, among other things, that the 1977 deed to Frank and his wife, by operation of the derelict fee statute, G. L. c. 183, § 58, passed to them title to the easterly half of the driveway. The judge further determined that the 1986 deed, also by operation of the derelict fee statute, passed to Christine title to the westerly half of the driveway not conveyed to Frank and Phyllis in 1977. In addition, the judge declared that each fee simple owner of Bagley Avenue has a perpetual

---

[10]According to the notations that appear in the upper left hand side of the documents, the 1986 deed and the 1985 variance were recorded together.

[11]The recorded 1985 plan referenced in the 1986 deed is reproduced in Appendix B.

nonexclusive easement and right of way to pass and repass on foot and by vehicle on the portion of the fee in Bagley Avenue that he or she does not own.[12] Lastly, the judge declared that the owners of Lot 151C have a similar perpetual nonexclusive easement and right of way as to Bagley Avenue.[13]

On appeal, the defendants argue that the judge misapplied the derelict fee statute, and that under a correct reading of the statute, they own the fee in the entirety of Bagley Avenue, while Frank and his wife, as owners of Lot 1, have deeded easement rights to the way, and the owners of Lot 151C have an easement by necessity therein. We agree that the judgment below was error. After briefly reviewing salient aspects of the derelict fee statute and its interpretation, we first examine the 1977 conveyance and conclude that it did not convey any part of the fee to the driveway. We then examine the 1986 conveyance and conclude that it conveyed the fee to the entire driveway. Lastly, we address the availability of reformation as a means of redressing certain unintended consequences that result from application of the derelict fee statute in the circumstances, particularly with respect to the Murphys' retention of any fee ownership in the driveway.

*The derelict fee statute.* General Laws c. 183, § 58, as appearing in St. 1990, c. 378, § 1, provides, in pertinent part:

"Every instrument passing title to real estate abutting a way, whether public or private . . . shall be construed to

---

[12]The exception to these mutual nonexclusive easements is the twenty foot by fifty foot bumpout on the easterly side of the way, shown on the 1977 and 1985 plans, and referred to as the "turn-around" or "parking area." The judge concluded, for reasons not entirely evident, that the bumpout is owned exclusively in fee by Frank and Phyllis free of any right of passage or easement in favor of the owners of Lot 151A.

[13]The judge's declaration provided that the owners of Lot 151C "have, as appurtenant to Lot 151C: (i) a perpetual non-exclusive easement and right of way to pass and repass on foot and by vehicle, in common with all others lawfully entitled thereto, along and over the bituminous concrete driveway now existing on Bagley Avenue for the purpose of ingress to, and egress from, the lot they own of record, Lot 151C and (ii) a perpetual non-exclusive easement, in common with all others lawfully entitled thereto, to use, repair, maintain, restore, and replace a sewer and drain passing through and under Bagley Avenue, together with the right to enter upon Bagley Avenue and the adjoining premises to carry out repair, maintenance, restoration, and replacement of the sewer and drain pipes and facilities."

include any fee interest of the grantor in such way . . . ,
unless (a) the grantor retains other real estate abutting
such way . . . , in which case, (i) if the retained real
estate is on the same side, the division line between the
land granted and the land retained shall be continued into
such way . . . as far as the grantor owns, or (ii) if the
retained real estate is on the other side of such way . . . ,
the title conveyed shall be to the center line of such way
. . . as far as the grantor owns, or (b) the instrument
evidences a different intent by an express exception or
reservation and not alone by bounding by a side line."

We noted in *Tattan* v. *Kurlan*, 32 Mass. App. Ct. 239, 243
(1992), that "[t]he statute incorporates the basic common law
principle of presumed intent with regard to conveyed land abut-
ting an actual or contemplated way owned by the grantor. The
common law presumed that the grantor intended to pass title to
the center of the way." The fee to the center "carries with it the
right to use the way along its entire length." *Brennan* v. *De-
Costa*, 24 Mass. App. Ct. 968, 968 (1987).

The presumption at common law "could be overcome by
clear proof of a contrary intent of the parties 'ascertained from
the words used in the written instrument in the light of all the
attendant facts.' *Suburban Land Co.* v. *Billerica*, 314 Mass. 184,
189 (1943). . . . Section 58's mandate that title in the way is
conveyed to the abutting grantee, however, is stricter than the
common law rule which it codified and superseded. The statu-
tory presumption is conclusive when the statute applies, unless
. . . the 'instrument passing title' evidences a different intent
'by an express . . . reservation.' Other 'attendant' evidence of
the parties' intent is no longer probative." *Tattan* v. *Kurlan*,
*supra* at 243-244. See *Rowley* v. *Massachusetts Elec. Co.*, 438
Mass. 798, 804 (2003).

*The 1977 conveyance to Frank and Phyllis.* It is uncontested
that the 1977 deed does not contain any "express reservation"
evidencing an intent contrary to the statutory presumption that
title in the driveway is to be conveyed to the abutting grantee.
Extrinsic evidence that the Murphys did not intend to convey
the fee to the center of the driveway is thus irrelevant if they
passed title to real estate "abutting" a way. Whether the 1977

conveyance of Lot 1 in fact passed real estate "abutting" a way, as that term is used in § 58, is the question we must resolve.

In *Emery* v. *Crowley*, 371 Mass. 489, 492 (1976), the court noted that the derelict fee statute does not itself define the term "abutting," and so turned to "established judicial rules of definition" to decide whether § 58 applied to the instrument at issue. Keeping "in mind that rules of construction," even statutory ones, "are designed to elucidate the intent of parties to written instruments," the court looked "to the instruments themselves and extrinsic facts, if necessary, to decide if the deeds involved . . . pass title to real estate 'abutting' a 'way.' " *Id.* at 493.

The court in *Emery* concluded, with respect to the facts before it, that the term "abutting" means "property with frontage along the length of a way." *Id.* at 494. Here, nothing in the 1977 deed description suggests that Lot 1 touches, abuts, or has frontage along a way, other than the public Hartwell Road. The parcel is not described as being bounded by the driveway or by a private way. The land to the west of Lot 1 is described no less than five times as the grantor's land. While the absence in the deed of a specific reference to bounding by a way is not necessarily dispositive in the event that a parcel physically abuts a public or private way or other linear monument, *Rowley* v. *Massachusetts Elec. Co.*, 438 Mass. at 804, it is also true that the failure to describe the land in the deed as being bounded by a way is by no means without significance when construing that deed. In the circumstances here, the failure to describe Lot 1 in the deed's metes and bounds description as bounded by the driveway is some evidence that Lot 1 is not in fact bounded by the driveway. Compare the language in the 1977 deed (describing Lot 1 as bounded by "other land shown on said plan of Murphy," and bounded "again by said Murphy land") with the language in *Emery* v. *Crowley*, 371 Mass. at 491 (parcels conveyed abutted a paper street ["parcel 2"], which was referred to in deeds as "other land of the grantor"). The *Emery* court concluded that, under the circumstances, "parcel 2" "did not constitute a 'way' in the instruments passing title to the property." Observing that "[b]oth the metes and bounds descriptions of the lots conveyed and the plans incorporated in the deeds clearly delineate . . . parcel 2 as belonging to the grantor or his spouse,"

the court concluded that "[t]he parties obviously intended and understood that this land was retained by the grantor, and that "[G. L. c. 183,] § 58[,] does not apply to those instruments." *Id.* at 493. See *Rowley* v. *Massachusetts Elec. Co.*, 438 Mass. at 805 n.11 (decision in *Emery* "turned on the fact that the deeds to [the abutting] parcels delineated [parcel 2] in terms that clearly evidenced the grantor's intent to retain the ownership of the fee therein"). Here, not only does the deed describe Lot 1 as being bounded by the grantor's land, the deed fails to describe Lot 1 as being bounded by the driveway, and there is nothing of record to suggest that the actual metes and bounds description in the deed brings the westerly lot line of Lot 1 to the edge of the driveway.[14]

We turn next to the 1977 plan incorporated in the 1977 deed. Such a plan may be considered in determining the physical bounds of land conveyed. *Tattan* v. *Kurlan*, 32 Mass. App. Ct. at 246. The 1977 plan depicts the driveway with dotted lines and clearly shows a gap or strip of land between the southwesterly lot line of Lot 1 and the driveway. Nothing shown on the 1977 plan itself suggests that the gap land is intended to be included in what is labeled "Bit. Conc. Driveway." The judge concluded, however, that the gap land was intended to be included as part of the driveway for two reasons: first, it is much like a grassy shoulder adjacent to a public way that is to be considered part of the public way, and, second, the express easement over the driveway would be ineffective if the "Bit. Conc. Driveway" depicted on the 1977 plan did not also include the strip of land next to it. We do not think either reason persuasive.

It is true that a grassy strip next to a public way may be considered part of the public way if the layout of the way includes the grassy strip. See, e.g., *Diamond* v. *Newton*, 55 Mass. App. Ct. 372, 374 (2002) (forty-foot width of land taken

---

[14]Compare and contrast *Lemay* v. *Furtado*, 182 Mass. 280, 281-282 (1902), relied on by the trial judge. There, as here, the metes and bounds description did not bring the land conveyed to the way at issue, but, unlike the instant matter, the land conveyed in *Lemay* was described as bounded by the way. In those circumstances, the way, being a monument, prevails over the metes and bounds description. See *Holmes* v. *Barrett*, 269 Mass. 497, 499-500 (1929); *Ryan* v. *Stavros*, 348 Mass. 251, 258-259 (1964). See also *Overly* v. *Treasurer & Recr. Gen.*, 344 Mass. 188, 192 (1962) (road is a monument).

and dedicated by city as public way included road, sidewalk, and grass and dirt area between sidewalk and road). Here, however, nothing in the 1977 deed description or the 1977 plan suggests that the strip between the driveway and Lot 1's southwesterly lot line was intended to be part of the driveway.[15]

As to the express easement contained in the 1977 deed and its purported limitations, while it appears that the easement was less than artfully drafted and it very well may be the case that the grantors intended to include easement rights over the gap land in order to enable Frank and Phyllis to access their property from the driveway,[16] the conveyance of easement rights and of a fee are quite different matters. Any shortfall in the easement does not support the inference that the grantors intended to convey the gap land as part of the driveway such that Lot 1 would physically abut the driveway and that application of § 58 would operate to pass the fee to the center of the way. Indeed, had the grantors intended to include the gap land as part of the driveway and thereby pass the fee to the center of the way, it would have been unnecessary to grant Frank and his wife any easement at all. See *Brennan* v. *DeCosta*, 24 Mass. App. Ct. at 968, and cases cited. The grantors, however, were explicit in granting easement rights, and nothing more, over the land shown as "Bit. Conc. Driveway" on the 1977 plan.

The absence in the metes and bounds description of any intent to bound the lot by the driveway, the presence of a physical gap between the lot line and the driveway as shown on the 1977 plan, and the express easement over the driveway together convince us that Lot 1 does not "abut" on the driveway for purposes of § 58. See *Cetlin* v. *Bradford*, 242 Mass. 434, 444 (1922) (where the deed description fixed the boundary line in relation to a building on the lot, resulting in a line parallel with and two feet south of the southerly line of the way, and no reference was made to the way in the deed, the premises did not abut on it and the grantee received no interest in the fee). Because the 1977 deed to Frank and Phyllis did not pass "real estate

---

[15]To the extent the judge considered the 1985 plan in this regard, this was incorrect. The later plan can have no significance in determining what had been intended in 1977. See, e.g., *Cetlin* v. *Bradford*, 242 Mass. 434, 445 (1922).

[16]As to the extent of the easement rights conveyed to the owner of Lot 1, see note 19, *infra*.

abutting a way" other than Hartwell Road, it was unnecessary for the grantors to explicitly reserve the fee in the driveway. The result is that in 1977, when the Murphys conveyed Lot 1 to Frank and Phyllis, no part of the fee in what is now Bagley Avenue was conveyed to them.[17] This, however, does not in any way impair the express easement rights given to them in the 1977 deed.

*The 1986 conveyance to Christine.* By 1986, the driveway had come to be called Bagley Avenue. The deed transferring Lot 151A to Christine contained no metes and bounds description, identifying the parcel only as "shown as Lot 151A" on the 1985 plan. That plan clearly depicts Lot 151A as physically touching and abutting Bagley Avenue, and no gap between Lot 151A and Bagley Avenue appears on the plan. Hence, the deed to Christine passes "real estate abutting a way" as those terms are used in § 58, and the fee at least to the center of the way passed to Christine by virtue of the derelict fee statute.

The question becomes whether Christine or the Francis J. McGovern and John Joseph McGovern Family Trust (Trust), as the Murphys' successor, holds the fee to the remaining eastern half of Bagley Avenue. As previously discussed and for reasons that are unclear on the record, the 1985 plan depicts as part of Bagley Avenue the strip that had separated the driveway from Lot 1 in the 1977 plan. As a result of including the strip as part of Bagley Avenue in the 1986 conveyance to Christine, the Murphys did not retain the fee to any land on the opposite side of the driveway, and therefore, the fee to the entire way passed to Christine by operation of § 58. Absent an express reservation in the deed, the uncontroverted evidence of the grantors' contrary

[17]As a further reason to affirm the judgment of the Land Court, the plaintiffs refer to testimony at trial that Frank "had taken care of [the grassy strip abutting the driveway] for the past thirty years." However, there being no ambiguity in the instruments, there is no need to resort to extrinsic evidence to construe the deed and plan in light of the attending circumstances. *Hanson* v. *Cadwell Crossing, LLC,* 66 Mass. App. Ct. 497, 502-503 (2006), citing *Sheftel* v. *Lebel,* 44 Mass. App. Ct. 175, 179 (1998). In any event, Frank and Phyllis would fare no better even were we to consider the apparent intentions of the parties in construing the provisions of the 1977 deed. The evidence in the record suggests that the Murphys at all operative times intended to retain ownership of the fee in the driveway later known as Bagley Avenue, not that they intended to pass a portion of the fee to Frank and Phyllis in 1977.

intent to retain the fee (including the Murphys' refusal to convey the fee to Christine in order to avoid the need to obtain a variance, the testimony of Christine that she understood her parents' intention to retain the fee in Bagley Avenue, and the conduct of the parties following the conveyance, including Arlene Murphy's grant of an easement to Christine in 2000) cannot be considered to forestall the application of § 58. See *Rowley* v. *Massachusetts Elec. Co.*, 438 Mass. at 804; *Tattan* v. *Kurlan*, 32 Mass. App. Ct. at 243-244. No such express reservation appears in the 1986 deed.

*Reformation.* Although evidence of the Murphys' intention to retain the fee in Bagley Avenue and Christine's acknowledgment of and behavior consistent with that intention cannot alter the application of § 58 in this case, such evidence does bear on the Trust's claim for reformation of the 1986 deed to Christine. Cf. *Mickelson* v. *Barnet*, 390 Mass. 786, 792 (1984) (when mistake is alleged, extrinsic evidence of intent may be considered, notwithstanding parole evidence rule). "Reformation is available to parties where there has been a mutual mistake which is material to the instrument and where no rights of third persons are affected. It is of no critical importance whether the mutual mistake is one of fact or law; it is sufficient that it is material and that it is of a type which can be remedied in equity." *Beach Assocs.* v. *Fauser*, 9 Mass. App. Ct. 386, 394-395 (1980). See *Mickelson* v. *Barnet*, 390 Mass. at 791; *Torrao* v. *Cox*, 26 Mass. App. Ct. 247, 250 (1988).

Here, the fee to Bagley Avenue passed by operation of law rather than any express language in the deed. Although we are unaware of a case which has applied, on a proper showing, the equitable doctrine of reformation to the effects of the operation of G. L. c. 183, § 58, we perceive no impediment to reformation in such circumstances. "Upon the finding that because of mutual mistake the deed did not convey the land which the [plaintiffs] intended to sell and the [defendant] to buy, reformation by the delivery of proper deeds to express the real intention of the parties is the appropriate remedy." *Crowley* v. *Holdsworth*, 264 Mass. 303, 308 (1928). See *Franz* v. *Franz*, 308 Mass. 262, 266-267 (1941) (reformation of deed mistakenly made out to husband and wife as tenants by the entirety, rather than as joint tenants).

Clear and convincing proof of the mistake is required to reform a deed due to mutual mistake. *Covich* v. *Chambers*, 8 Mass. App. Ct. 740, 747-748 & n.12 (1979). The Trust has met that standard here. The judge acknowledged that the uncontradicted evidence suggested that the Murphys were "very much concerned about retaining ownership of Bagley Avenue." Christine acknowledged that, at the time of the 1986 conveyance, she understood that her mother was retaining the fee to Bagley Avenue and that Christine would have easement rights only. Further, the Murphys went to the trouble of obtaining a variance in 1985 when, had they been willing to convey to Christine the fee to Bagley Avenue, a variance would have been unnecessary. Christine was involved in those variance proceedings and concedes that she was aware that her parents wanted to retain the fee in Bagley Avenue. Furthermore, the conduct of the parties after the conveyance was consistent with retention of the fee in the Murphys. When the turn-around or parking area across Bagley Avenue from the driveway to Lot 151A had deteriorated, Christine testified that the Murphys arranged and paid for the removal of the deteriorated railroad ties and paving of the area. When disputes arose in 2000 about control and maintenance of Bagley Avenue, Arlene Murphy gave, and Christine accepted and recorded, a written easement over the way. Moreover, the record reflects that it was not Christine who maintained Bagley Avenue but, rather, the Murphys or the Trust.[18] The evidence is formidable and essentially undisputed that in the 1986 conveyance of Lot 151A to Christine, the Murphys did not intend to convey the fee in Bagley Avenue and Christine did not understand it to be conveyed. So far as the record reflects, it appears that the parties to that conveyance simply did not understand the legal effect arising from the description of the property by reference to a lot number shown on a plan as abutting a private way. "In these circumstances, where the expected legal consequences were not provided for in the deed, we think that the [plaintiff] is entitled to have the deed reformed to carry out the expressed intent of the parties. 'It is the mistake of the

---

[18]Christine also concedes that it was not until 2000 that she first became aware of the possibility that she might have ownership rights in Bagley Avenue but did not follow up on the suggestion until 2005 when she sought further legal advice.

parties to the deeds which we are to inquire into; and if . . . they were misled by a misplaced confidence in the skill of the scrivener, it can hardly be said to be a mistake of law and not of fact on their part. But . . . courts of equity in such cases are not limited to affording relief only in case of mistake of facts; and . . . a mistake in the legal effect of a description in a deed, or in the use of technical language, may be relieved against, upon proper proof.' " *Franz* v. *Franz*, 308 Mass. at 267, quoting from *Canedy* v. *Marcy*, 13 Gray 373, 377 (1859).

While acknowledging the substantial evidence of mutual mistake, the judge reasoned that reformation was not appropriate because the fee in Bagley Avenue was not so material to the agreement as to justify reformation. We disagree. "Title in fee . . . and an easement are different." *Brown* v. *Sneider*, 9 Mass. App. Ct. 329, 332 (1980). Here, the evidence shows that the transfer of Lot 151A to Christine was essentially a gift, with Christine paying only the legal and surveying fees, and the price of the property was thus not a material factor. The evidence suggests that the only issue of significance to the Murphys in making the transfer of Lot 151A to Christine was the retention of the fee in Bagley Avenue. Given the disputes that have arisen among the parties with respect to use, maintenance, and control of the way, it is not at all clear that the Murphys erred in the importance they placed on retaining the fee. Indeed, given the location of their home and remaining acreage, along with the fact that utilities to their home pass under Bagley Avenue, the Murphys would have been well advised to retain the fee in the way.

While ownership of the fee in a way may not be material in every conveyance passing property abutting a way, in the circumstances presented in this case, retention of ownership of the fee to Bagley Avenue was sufficiently material to the conveyance of Lot 151A from the Murphys to Christine to sustain the Trust's claim for reformation. The evidence is clear and convincing that the Murphys did not intend to convey and Christine did not expect to be conveyed to her any portion of the fee to Bagley Avenue as a result of the 1986 transfer, and that the deed failed accurately to reflect their intentions. The 1986 deed should accordingly be reformed to reserve expressly to the grantors the fee in Bagley Avenue. That is not to say, however, that Christine

did not expect to receive easement rights. The parties rectified that omission by virtue of the 2000 written easement from Arlene Murphy to Christine, and we discern no reason that the 2000 easement should not retain full force and effect. In addition, Frank and Phyllis, as owners of Lot 1, will continue to have the express easement rights granted them in the 1977 deed. Accordingly, as owner of the fee in the way under a reformed deed, the Trust may use the entirety of Bagley Avenue to the extent its use is not inconsistent with or does not materially interfere with the easement holders' rights. *Western Mass. Elec. Co.* v. *Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815, 818 (1979).

*Conclusion.* The penultimate paragraph of the judgment, dismissing with prejudice all claims and counts pertaining to matters other than ownership of and easements in Bagley Avenue, is affirmed. In all other respects, the judgment, inclusive of the easement rights as declared by the judge, is reversed. The case is remanded for further proceedings consistent with this opinion, including reformation of the 1986 deed to retain ownership of the fee in Bagley Avenue in the grantor.[19]

*So ordered.*

---

[19]We note that the 2000 easement to Christine includes the entirety of Bagley Avenue, including the turn-around or parking area. To the extent that passage over that parking area facilitates ingress and egress to Lot 151A, the easement expressly allows such use. However, neither Frank's nor Christine's easement contains any express right to park on Bagley Avenue, and to the extent parking rights are claimed as within the scope of the parties' respective easements, the record before us is insufficient to address the point. Any continuing issues as to the extent of the parties' easement rights may be considered further on remand.