## CLIFFORD J. MARTIN *vs.* SIMMONS PROPERTIES, LLC.

No. 11-P-1224.

Suffolk. March 9, 2012. - September 11, 2012.

Present: COHEN, GREEN, & GRAHAM, JJ.

Further appellate review granted, 463 Mass. 1110 (2012).

*Real Property,* Registered land: easement, Easement, Grant, Poles and wires, Drain. *Easement. Way. Mistake. Limitations, Statute of.*

In a civil action brought in the Land Court by the owner of parcels of registered land alleging, inter alia, interference by the defendant servient owner of a right of way in which the plaintiff's easement rights had been reserved as shown on a specific Land Court plan, the judge properly rejected the plaintiff's claim that easement rights over an area not depicted on the plan were mistakenly omitted in the original reservation, where the assertion of unilateral mistake of the grantees did not give rise to a claim for reformation [407]; however, the judge erred in concluding that removal was not required of the majority of the permanent obstructions constructed by the defendant in the easement, where, given that the reservation of the right of way was made by reference to the Land Court plan, the obstructions were inconsistent with the plaintiff's right of passage unobstructed through the entire width of the way [407-411]; further, the judge did not err in finding that utility poles placed on the way and temporary parking of cars on the way did not interfere with the plaintiff's access to or current use of it [411]; moreover, remand for further findings was required to determine whether the defendant adopted or maintained landscaping and curbing placed on the way [411]; finally, the judge did not err in concluding that the placement of fill on the right of way was not inconsistent with the plaintiff's easement [413].

In a civil action brought in the Land Court by the owner of two parcels of registered land alleging, inter alia, interference by the defendant servient owner of neighboring property by covering over drains into which the plaintiff had an express easement to drain water, the judge, although erring in his conclusion that the tort statute of limitation barred the plaintiff's claim, correctly concluded that the plaintiff had not shown that the existing drains on one of his lots were insufficient. [412]

In a civil action brought in the Land Court by the owner of a parcel of registered land alleging, inter alia, interference by the defendant servient owner of neighboring property with sprinkler, sewer, and water pipes in which the plaintiff enjoyed easement rights, the judge did not err in concluding that the plaintiff failed to meet his burden of proof. [412-413]

CIVIL ACTION commenced in the Land Court Department on August 3, 2007.

The case was heard by *Gordon H. Piper*, J.

*Clifford J. Martin*, pro se.

*Joseph P. Mingolla* for the defendant.

GRAHAM, J. The plaintiff, Clifford J. Martin,[1] owns a vacant lot of registered land in an industrial and commercial subdivision on the Medford-Somerville line, abutting a major railroad corridor. The lot has no frontage on a public way but is accessible via rights of way reserved by the original owner over ways within the subdivision. The reservation describes the ways not in words, but "as shown" on a specific Land Court plan.

Martin filed a complaint in the Land Court in August of 2007, alleging that Simmons Properties, LLC (Simmons), servient owner of "Way A" and other adjacent property within the subdivision since 1993, has interfered with his right of way by, among other things, placing encroachments in, parking on, and improperly placing fill within the way. Martin further alleged that Simmons has interfered with other express easements in certain water, drainage, sewer, and sprinkler pipes, and has trespassed by placing fill on Martin's lot. In addition, Martin alleged that his right of way extends over additional "unhatched"[2] land of Simmons northeast of Way A as shown on a Land Court plan and denied that Simmons's express easement over a portion of Martin's land continues to exist. Martin sought an order requiring Simmons to remove all encroachments and restore each of his easement rights.

After trial, the judge made detailed findings of fact and, in a carefully considered decision, found in favor of Simmons on all claims. The judge rejected Martin's claim that easement rights over the unhatched area on the plan were mistakenly omitted in the original reservation. He also rejected Martin's claim that he is entitled to use Way A unobstructed throughout its width and concluded, instead, that the improvements made by Simmons may remain and parking on Way A may continue because they are not inconsistent with the purpose of the easement and do not unreasonably interfere with Martin's ability to use the easement for its intended purpose. The judge further concluded that

---

[1]Martin has appeared pro se throughout these proceedings.

[2]That is, not marked on the Land Court plan by fine, closely-spaced lines.

Simmons's easement over a portion of Martin's property has not been extinguished by abandonment or otherwise; part of the area over which Martin objected to Simmons's use for parking is actually Simmons's property; Simmons has no duty to remove fill on Martin's easement or Martin's property because Martin's claims are time-barred, and, in any event, Martin had not satisfied his burden of proof that Simmons had deposited the fill or that the fill unreasonably interfered with the easement; there was inadequate proof that Simmons had interfered with Martin's easement rights in the water, drainage, sewer, and sprinkler pipes; and Martin was not otherwise entitled to the equitable relief he sought.

On appeal, Martin further presses his claims, which we address in more detail below. We conclude that some of the obstructions placed in Way A are inconsistent with Martin's right to use Way A through its entire width and must be removed. We also conclude that the judge erred in applying the tort statute of limitation to certain of Martin's claims that Simmons has interfered with his easements, but because the judge reached the correct result on other grounds, we need not vacate those portions of the judgment. We agree with the other conclusions reached by the trial judge. As a result, we affirm in part, vacate in part, and remand for further proceedings.

*Background.* The facts are not materially in dispute. The parties own lots of registered land that were once part of a large registered parcel on the Medford-Somerville line, fronted by Boston Avenue to the southwest and the Boston and Maine Railroad to the northeast.[3] The subdivision was for many years industrial but now supports both industrial and commercial uses. Martin, as the surviving joint tenant of a January 15, 1969, transaction, is the owner of lot 3A on Land Court Plan 6199J (J plan). Lot 3A is located to the rear of the subdivision from Boston Avenue and abuts the railroad. In 1993, Simmons purchased lot 4A as shown on the J plan, lot 1B as shown on Land Court Plan 6199H, and lot 20 on Land Court Plan 6199O.[4]

---

[3]The relevant registration documents are maintained by the Middlesex (South District) Land Registration District of the Land Court, and all title references are made to that district.

[4]Lot 20 is comprised of lot 10 and lot 12, shown in earlier iterations of Plan 6199.

Way A, described more fully below, separates lot 4A from lots 1B and 20 and leads to lot 3A. It appears undisputed that Simmons owns those portions of Way A that are in dispute here.

The J plan depicts a system of ways used to reach the various lots shown on the plan, including Ways A, B, C, D, and E. The rights of way are distinguished on the J plan by hatching. Way A provides access from the public way, Boston Avenue, and proceeds in a northeasterly direction between the building located on lot 4A to the northwest, known as 196 Boston Avenue, and the building located on lot 10 to the northeast, known as 200 Boston Avenue. Way A takes a ninety-degree left turn at the end of the original building on lot 4A and then intersects with Way E on lot 3A. So far as it appears from the J plan, lot 4A is also accessible by traveling on Way A for a short distance, turning left on Way B and right on Way C, to either Way D or Way E, each of which is located partially within lot 3A.

When Textile Realty Company conveyed what are now lot 20 and lot 4A to Simmons's predecessor, it granted a "right of way in common with Lot 3A" "over rights of way 'A,' 'B,' 'C' and 'E' as shown on" the J plan, and expressly reserved other specific easement rights for lots 3A as set out in the margin.[5] Martin's certificate of title makes reference to these and prior reservations. At the time lots 3A and 4A first came into separate ownership, the buildings on lots 3A and 4A shared some water pipes, and an elevated passageway connected lot 3A to lot 4A. The building on lot 3A, however, was destroyed by fire in 1991. It has not been rebuilt, and lot 3A is essentially vacant except for debris

---

[5]These included the right in common with lots 4A, 10, and 12 and lots 6 to 9 on the J plan "to maintain and use the four-inch (4") and six-inch (6") sewers leading southwesterly across Lots 4A and 7 on [the J plan] to Boston Avenue"; the right of lot 3A to draw water through the existing water pipes serving the buildings upon lot 3A where the pipes cross the premises above described (the grantee has the right to relocate any of the pipes to another location on its premises without interrupting the water supply); the right to use and maintain all existing railroad sidings and approaches; the right to discharge water into the eighteen-inch and twenty-four-inch drains leading, in part, across the premises, northwesterly from North Street to Mystic River Reservation, portions of which drains are shown on the plan; and the right to lay and maintain water, sprinkler, gas, and sewer lines and electric lines or conduits in any of the rights of way shown on the J plan; and the right to run a small pipe or flue under the ground from lot 3A to the chimney upon lot 4A and connect to it so long as the chimney is standing.

that was pushed into the building's foundation. The portion of the building on lot 4A closest to the site of the former building on lot 3A was demolished in 1993. Although Martin assumes that the water pipes connecting the building on lot 4A with the building on lot 3A have been removed or at least disrupted along with the 1993 demolition, the judge concluded that Martin had presented no reliable evidence that such is the case.

*Discussion.* 1. *Unhatched area.* As shown on the J plan, where Way A takes a ninety-degree left turn at the end of the original building on lot 4A, it becomes significantly narrower. Martin contends that the right of way was intended to continue into the area northeast of the building on lot 4A in order to allow a wider turn and easier access to lot 3A, as depicted on the I plan, which predates the J plan. The J plan, however, unlike the I plan, contains no hatching and no other markings indicating that the area is part of Way A or any other way. The judge correctly concluded that Martin's easement rights are limited to the hatched ways shown on the J plan.

Martin does not suggest that the hatching on the J plan merits a different interpretation, but he suggests that the grantor could not have intended to reserve such a small passageway to complete the access to lot 3A and must have intended to reserve rights in the unhatched area. While conceding that no prescriptive rights can be acquired on registered land, he contends that the long-term use of the unhatched area, both before and after the grantor conveyed lot 4A, indicates that the failure to include part or all of the unhatched area within the various easements reserved was a mistake, at least on the grantee's part, since the grantor no longer owned any relevant property. The change in the lot lines between the I plan and the J plan, however, appears quite deliberate, and even Martin concedes that "one must assume that the erasure of the hatching on the disputed area was intentional by the grantor." We are left, then, with an assertion of unilateral mistake of the grantees, which does not give rise to a claim for reformation. Mutual mistake of the grantor and the grantee is required for reformation of a deed. See *McGovern* v. *McGovern*, 77 Mass. App. Ct. 688, 699 (2010). That the grantor no longer retained any of the disputed property once it conveyed lot 3A to Martin's predecessor does not enhance Martin's argument.

2. *Obstructions of Way A.* Martin contends that Way A must

be left unobstructed throughout its entire width, with the exception of obstructions that existed when the right of way was created. Consistent with that contention, he seeks removal of the entrance foyer to 196 Boston Avenue, a depressed loading dock (including railings and curbing) adjacent to the elevator shaft of 196 Boston Avenue, a depressed stairwell (including surrounding canopy railings and curbing) serving as an entrance to 200 Boston Avenue, utility poles, and curbing and landscaping placed throughout Way A. He also seeks to prohibit the current use of the way for parking vehicles.

Our cases distinguish between easements and rights of way that are intended to be kept open throughout their full width and those that are intended to grant or reserve only a convenient passage. See *Beaudoin* v. *Sinodinos*, 313 Mass. 511, 516-518 (1943), and cases cited. While distinctions are made based on specific language in the deed or the extent to which a way is defined, we are aware of no case that holds that only a convenient passage is intended when a right of way is reserved over a way defined and located by reference to a Land Court plan. Other than citing *Johnson* v. *Kinnicutt*, 2 Cush. 153, 157-158 (1848) (right of way over a described space describes property over which right of way is granted but does not define the limits of right of way, and therefore, only convenient passage is reserved), the defendant makes no cogent argument that only a convenient passage was intended by the parties at the time of the reservation of the right of way over Way A.

It has been held consistently that where the description of a way is "definite, certain and free from ambiguity," a right of way includes the entire width of the described way. *Panikowski* v. *Giroux*, 272 Mass. 580, 582 (1930). Here, although there is no metes and bounds description of Way A, the reservation of the right of way was made by reference to the Land Court plan. Where a plan is incorporated by reference in the deed, "[t]he plaintiff [is] entitled to the use of the passageways within the limits indicated by the plan unobstructed throughout their entire width." *Peavey* v. *Moran*, 256 Mass. 311, 316 (1926). See *Guillet* v. *Livernois*, 297 Mass. 337, 340 (1937); *Onorati* v. *O'Donnell*, 3 Mass. App. Ct. 739 (1975).

Nonetheless, the judge reasoned that Simmons, as the servi-

ent owner of the way, may use the way in any manner that is not inconsistent with Martin's easement, and he essentially concluded that because Martin has room to go around the obstructions, they are not inconsistent with the easement. Where the easement holder is entitled to an unobstructed right of way, however, it is not enough that the easement holder can go around obstructions. While it is well settled that a servient estate owner may use his property in any way that is not inconsistent with the easement, see *M.P.M Builders, LLC* v. *Dwyer*, 442 Mass. 87, 91 (2004), we conclude the judge misapplied this general rule to the facts of this case. "The test by which to determine the obligation of the defendants to remove structures constructed by them since the creation of the easement is whether such structures are inconsistent with the plaintiff['s] rights for passage . . . through the entire passageway . . . ." *New York Cent. R.R.* v. *Ayer*, 242 Mass. 69, 75 (1922) (*Ayer II*). A finding that the obstructions do not interfere with present or future uses is immaterial where the reservation is of "absolute and not convenient uses or easements." *New York Cent. R.R.* v. *Ayer*, 239 Mass. 70, 77 (1921) (*Ayer I*).

We glean from the cases that permanent structures and objects that impede passage, unless truly de minimis, are inconsistent with a right of passage. In *Ayer II, supra* at 76-77, stairs leading to a lower floor of the defendants' building were held to be inconsistent with a right of way, and the holders of the right of way were entitled to a "restoration of the surface of the passageway to its level when established to be made of such material and supports as will render it substantially as firm, sound and convenient for passage on foot and by teams and trucks as it was on April 18, 1899, when the easement was created." See *Gray* v. *Kelley*, 194 Mass. 533, 535-536 (1907) (carts, sleds, and other chattel must be removed from way); *Carter* v. *Sullivan*, 281 Mass. 217, 224-225 (1932) (shed must be removed although abutters' steps may remain where right of way was only by foot); *Beaudoin* v. *Sinodinos*, 313 Mass. at 517-519 (building extension must be removed even where easement holder is not making any present use of the portion of the way on which the obstruction is located). Such obstructions are to be contrasted with improvements that are not inconsistent with the

right of passage. In *Ayer II, supra* at 75, a plank walk adjacent to the building and granite curbing, all of which was flush with the surface of the way and suitable for passage on foot, and by teams and trucks, were not inconsistent with the plaintiff's right of way. Similarly, the servient estate owner may resurface a right of way "so long as passage over it is left safe and convenient and adapted for the uses for which it was established," and the servient owner maintains the new surface. *Id.* at 74. "[T]he use of [an] unobstructed right of way is a valuable asset," *Beaudoin* v. *Sinodinos, supra* at 519, and we conclude that the weight of authority requires the removal of a majority of the permanent obstructions in Way A.

We are aware that there were some pre-existing projections into Way A when the right of way was granted. The judge found, however, that although Simmons has created an entry foyer roughly in the same location as an elevator shaft that existed when the right of way was created, the foyer extends for a greater width along the building than the elevator shaft, but not necessarily deeper into Way A. Nonetheless, where the entry-way at issue impedes passage for a greater distance than a pre-existing obstruction, it is inconsistent with Martin's right of passage. That Martin is not currently making use of that portion of the way is of no regard. In addition, the new depressed entrance providing access into 200 Boston Avenue is inconsistent with Martin's right of way. The same is true of the loading dock, which the judge found lies partially below grade.

Our conclusion that these obstructions must be removed is reinforced by the fact that maintenance of such obstructions in a right of way for twenty years is enough to extinguish an easement over nonregistered land. See *Post* v. *McHugh*, 76 Mass. App. Ct. 200, 204-205 (2010) (placement of boulders on way for twenty years extinguished easement as to that part of the way). See also *Pappas* v. *Maxwell*, 337 Mass. 552, 557 (1958) (extension of outhouse and plantings extinguished easement as to the area obstructed). It would be anomalous to conclude that maintenance of such obstructions is without right or permission held by the servient tenant, and adverse and hostile to the easement holder, for purposes of determining whether the elements of extinguishment by prescriptive use have been satisfied, but is

not inconsistent with Martin's right to use the defined way for its full width.

Pursuant to G. L. c. 187, § 5, however, owners of property abutting a private way may place utility poles upon the way provided the poles do not interfere with the existing use by others in the way. The judge found that the utility poles do not interfere with Martin's current use of the right of way, and Martin does not contend the finding was clearly erroneous. The utility poles, therefore, may remain. Further, parking cars is a temporary obstruction of the way. A servient estate owner may park cars on a right of way provided the cars do not substantially obstruct the easement holder's ingress and egress. See *Brassard v. Flynn*, 352 Mass. 185, 189 (1967). Here, the judge found that the parked cars do not interfere with Martin's access or current use. Moreover, there was no showing that Simmons, by allowing parking on Way A, made efforts to permanently prevent Martin from passing over any portion of the right of way. Compare *Delconte v. Sullivan*, 336 Mass. 184, 185, 189 (1957) (lessee sought to prevent easement holders from passing over parking space in way by posting no trespass signs and roping off parking space). In the present circumstances, therefore, parking on Way A may continue.[6]

Finally, Simmons contends it cannot be held liable to remove structures that were installed prior to its purchase of the property. Specifically, it contends that some of the curbing and landscaping were placed by its predecessor. Where Simmons has adopted the construction as its own, however, it cannot complain that an order mandating that it remove the permanent obstructions is inequitable. See *Boston & Albany R.R. v. Terminal Realty Corp.*, 252 Mass. 165, 168 (1925). The judge made no findings as to the extent to which Simmons adopted or maintained the landscaping and curbing. We therefore remand for further findings to determine whether the onus is on Simmons to remove the landscaping and curbing, or whether Martin must perform the work necessary to remove any obstructions he wishes to eliminate.

---

[6]Contrary to Martin's assertions, the judge found that the defendant is not currently parking cars on Way E or on lot 3A, and therefore, we need not address whether parking on the narrower Way E may continue.

3. *Drainage.* Simmons concedes that in 1993, it covered the eighteen- and twenty-four-inch drains into which Martin has an express easement right to drain water. The judge first concluded that Martin's claim is barred by the tort statute of limitation because he did not bring this action until 2007. We disagree that a tort statute of limitation applies to Martin's claim. Generally, "[a]n express easement can be extinguished only by grant, release, abandonment, estoppel or prescription." *Emery* v. *Crowley*, 371 Mass. 489, 495 (1976). Where, as here, registered property is involved, an express easement cannot be extinguished by prescription. G. L. c. 185, § 53. And, while even a registered easement may be extinguished by abandonment, *Lasell College* v. *Leonard*, 32 Mass. App. Ct. 383, 390 (1992), the defendant expressly waived that argument at trial.

The judge concluded further, however, that even if Martin's claims were not barred by the tort statute of limitation, Martin has not shown that the existing drains on lot 4A are insufficient for either lot 4A or lot 3A. If the easement provides the owner of lot 3A the right to use the existing drain openings in the eighteen- and twenty-four-inch drains, it was not open to Simmons to relocate the easement without Martin's consent or court approval. *M.P.M. Builders, LLC* v. *Dwyer*, 442 Mass. at 93-94. We are of the opinion, however, that all that is reserved is the right to "discharge water into the" eighteen- and twenty-four-inch drains at any location. Simmons has not prevented Martin from discharging water into the drains. There is no easement language either restricting the right to drain into the current drain openings or requiring Simmons to maintain those or any other openings. The judge found that the drains that do exist on Simmons's property handle the collection and removal of surface water on the site and that there has been no showing that the current array of drains does not serve Martin's land adequately. Because there has been no showing that the drains have been removed, that connections from lot 3A have been disrupted, or that Simmons has prevented Martin from discharging water into the drains, Martin is not entitled to relief.

4. *Sprinkler, sewer, and water pipes.* Simmons contends it has not removed or prevented Martin from connecting to the sprinkler, sewer, and water pipes in which the owner of lot 3A enjoys

easement rights use for the benefit of the building that had been located on lot 3A. The judge concluded that Martin had failed to prove that the connections had been destroyed when Simmons demolished an addition to its building. It is not clear to us that these easement rights were not extinguished when the building on lot 3A was destroyed by fire. *Comeau* v. *Manzelli,* 344 Mass. 375, 381 (1962) (easement extinguished when incapable of being exercised for limited purpose for which it was created). But even if the rights have not been extinguished, on the record presented, we cannot say the judge erred in concluding Martin failed to meet his burden of proof. There simply was no showing that Martin's easement rights have been blocked or impaired.[7]

5. *Fill on Way A.* Martin claims that Simmons placed fill on Way A which has elevated Way A some six feet, and that in order to develop his property, he will have to create a ramp to access Way A. This harms him, he contends, because a ramp will result in fewer parking spaces on his property and therefore reduce the size of the building he may construct. He cites to cases that hold generally that an easement holder has a right to restoration of the original grade of an easement.

Based on a view and the evidence at trial, the judge found that the "current layout, configuration, and improvement of Way A is fully consistent with the purposes of the registered easement. This is true as to the grade of the full length of Way A, about which there was testimony, and which I observed on the view I took." On appeal, Martin has not provided a statement of facts and makes no argument that the judge's findings are clearly erroneous. As Martin has failed to demonstrate that the judge's finding that the fill on Way A is not inconsistent with Martin's easement is clearly erroneous, we agree with the judge that Simmons is not required to return the way to the grade that existed when the right of way was originally reserved.

6. *Fill on lot 3A.* Martin claims that Simmons deposited fill on his property. The judge found that although it is more than likely that fill has been deposited on lot 3A, there was inadequate proof that Simmons had placed the fill there. The finding was

---

[7]To the extent the judge relied on the tort statute of limitation to preclude Martin's claim, we conclude, as stated above, that the tort statute of limitation is not applicable to Martin's claim of interference with his easement.

not clearly erroneous, and therefore there was no error in the judge's conclusion that Simmons has no obligation to remove the fill.

7. *Simmons's easement over Way E.* We agree with the judge that the language in the reservation of the right of way to benefit lot 4A over Way E, which is located partially on Martin's property, does not require the continuing existence of a platform over Way E.

*Conclusion.* We vacate so much of the judgment that concludes that Simmons has no liability to Martin in connection with the current improvements in Way A. Because the parties agree that some of the encroachments preceded Simmons's ownership and the judge made no findings whether Simmons has adopted or maintained those improvements, we remand for findings on that issue and for additional orders consistent with this opinion. In all other respects, we affirm the judgment.

*So ordered.*